R. O. BURTON v. R. M. FURMAN, State Auditor, et al.

*Mandamus, Writ of—State Auditor—State Treasurer—Discretion of Officers—Suit Against the State as Trustee.*

1. *Mandamus* is now a writ of right, to be used as ordinary process, to which everyone is entitled where it is the appropriate and only remedy.

2. *Mandamus* will not be granted to compel the performance of an act involving the exercise of judgment and discretion on the part of the officer to whom its performance is committed.

3. The duty of the State Auditor is to examine and to liquidate the claims of all persons against the State, in cases where there is sufficient provision of law for the payment thereof, and, where there is no such provision, to examine and report the fact, with his conclusions, to the General Assembly.

4. Where, in pursuance of an act of the General Assembly compromising certain litigated claims against a railroad company, a sum of money was paid by the railroad company "into the State Treasury, to provide a fund for the payment of the attorneys employed by the State" in such litigation, one of whom was settled with in full, and the other was paid a part of the fee which he charged for his services, and there remained of such fund so provided for the attorneys more than enough to pay the balance of the fee so charged, and the State Treasurer refused to pay such balance, and the State Auditor refused to issue a warrant for the payment thereof : *Held*, that *mandamus* will not lie either against the Treasurer, to compel him to pay, since the statute provides that "no moneys shall be paid out of the treasury except on the warrant of the Auditor" ; nor against the Auditor, to compel him to issue a warrant, inasmuch as his duty in the premises is not ministerial simply, but involves the exercise of his discretion in the examination and liquidation of the claim.

CIVIL ACTION, heard at April Term, 1894, of WAKE Superior Court, before *Hoke, J.*

The nature of·the action is stated in the opinion of Associate Justice MACRAE.   His Honor Judge Hoke granted the motion of the defendants to dismiss the action on the ground that it did not state a cause of action, and the plaintiff appealed.

*Mr. R. O. Burton,* for plaintiff (appellant).
*The-Attorney General* and *Mr. R. C. Strong,* for defendant.

MACRAE, J.: This is an action whereby the plaintiff, an attorney at law, seeks to recover $974.88, the balance of a fee of $5,000 claimed by him for services rendered the State in litigation with the Wilmington and Weldon Railroad Company over its liability for State, county and city taxes, and to compel the payment to him of said sum out of the fund placed in the State Treasury by the counties and the railroad company, under the provisions of section 7, chapter 100, Private Laws of 1893.

As set out in the complaint, there had been much litigation concerning the right to tax the said company, and the act above named was the result of long negotiation for an adjustment of all matters in difference on said account. Section 7 is the final section of this act and reads as follows: "That to provide a fund for the payment .of the attorneys employed by the State in litigation against said company, in making payments to the counties, cities and towns of the amounts due each under this act the said company shall deduct from the amount due each county, city or town, fifteen *per centum,* which said *per centum* the said company shall pay into the State Treasury.   *   *   *   And said company shall, for like purposes, pay into the State Treasury the sum of $2,500."   *   *   *   The parts omitted are immaterial for our present purpose.

The action is both to ascertain and declare the amount due and to procure a *mandamus* to the Auditor compelling him to issue his warrant, and to the Treasurer to compel him to pay the same.

There is no further contention that the writ of *mandamus* is a high prerogative writ, as it was at common law. It is now a writ of right, to be used as ordinary process, and everyone is entitled to it where it is the appropriate process for asserting the right claimed. *The Code*, §§ 622 and 623; *Belmont* v. *Reilly*, 71 N. C., 260. So the first question presented is, is this the appropriate process for ascertaining the plaintiff's right?

The purpose of this writ of *mandamus* is to require some Superior Court, officer, corporation or person to do some particular thing which appertains to their office or duty, and it will not be granted where the law affords to the party aggrieved another and complete specific remedy. Neither will this writ be granted to compel the performance of an act involving the exercise of judgment and discretion on the part of the officer to whom its performance is committed. The law is so thoroughly settled in this State by the former adjudications of this Court, that we have nothing to do but refer to them.

A case strikingly like the present one is *Boner* v. *Adams, Auditor, and Jenkins, Treasurer*, 65 N. C., 639, where the plaintiff, a clerk of the General Assembly, who had received a warrant for the entire number of days to which he was entitled, at $7 per day, claimed that he was entitled to be paid $3 per day in addition to what he had already received, under an Act of Assembly, chapter 1, session 1869–'70, which provided that the mileage and *per diem* of the clerks " shall be the same as allowed by the last General Assembly." And further, it was provided that " the Auditor of the State is hereby authorized to draw his warrant upon the Treasurer for such sums as have not been paid, or may hereafter be due."

The Auditor refused to draw his warrant upon the Treasurer for the additional sum demanded, and thereupon application was made to the Court for the writ of *mandamus* to compel the Auditor to issue the warrant and the Treasurer to pay it. It was held that *mandamus* would not lie against the Treasurer, because no warrant had been issued, and not against the Auditor, because it was something more than a ministerial duty sought to be required of him. This was before the Act of 1871, § 622 of *The Code*, which provided that all applications for *mandamus* should be made by summons and complaint, but the principles governing the issue of *mandamus* were the same then as now, and the decision is a controlling one, in which we fully concur.

Since the passage of the last named act the subject has been often considered. Selecting one of such cases, *Brown* v. *Turner*, 70 N. C., 93, we find a very clear statement by Mr. Justice BYNUM: "*Mandamus* will lie when the act required to be done is imposed by law, is merely ministerial; the relator has a clear right and is without any other adequate remedy. Moses on Mandamus, 68. But it does not lie where judgment and discretion are to be exercised; nor to control the officer in the manner of conducting the general duties of his office. 2 Dillon on Corp., § 665; 34 Pa. St. Rep., 496."

In *Decatur* v. *Spaulding*, 14 Pet., 497, it was held that *mandamus* would not lie against the Secretary because the duty required by the writ was executive, in which judgment and discretion had to be used, to wit, in construing and passing upon an act of Congress. To the same effect is *Brashear* v. *Mason*, 6 How., 92; *United States* v. *Guthrie*, 17 How., 284, where the Court says: "It has been ruled that the only acts to which the power of the Court by *mandamus* extends are such as are purely ministerial, as to which nothing like judgment and discretion in the performance of the duties is left to the officer."

*The Code*, § 3350 (7), prescribes, among the duties of the

Auditor, " to examine and liquidate the claims of all persons against the State in cases where there is sufficient provision of law for the payment thereof, and, where there is no provision, to examine the claim and report the fact, with his opinion thereon, to the General Assembly." It will be seen at once that the duty of the Auditor is not in this instance a ministerial one, but he is required to exercise his judgment in the examination of claims and the construction of statutes applicable thereto.

Some authorities have been cited to us by the plaintiff, among them Heard's Shortt's Ex. Rem., which goes so far as to say that while in former times a *mandamus* was held to lie only to compel the performance of a ministerial duty, modern cases have gone much further, and a *mandamus* will now be granted, when necessary, to compel the performance of any public duty. Perhaps the present case aptly illustrates the meaning of the author. If, upon the presentation of his claim to the Auditor by the plaintiff, the Auditor should refuse to examine the same, the action for a a *mandamus* would lie, and the Auditor would be commanded to do his duty, but the Court would not undertake to direct or control him in the exercise of his judgment and discretion in the course of such performance. There have been occasional cases of this kind against Boards of County Commissioners to compel them to hear applications of persons applying for license to retail spirituous liquors, but the Court could go no further than to require them to exercise their discretion. This claim has been presented to the Auditor, he has examined it, and has refused to issue his warrant; it must be that in his opinion there is no provision of law for its payment. We have no power to require him to do more than he has done, unless, perhaps, if he should refuse to report the case, with his opinion, to the General Assembly.

As to the Treasurer, his duty is, if possible, more clearly

defined.   Section 3356 : " To pay all warrants legally drawn on the Treasurer by the Auditor, and *no moneys shall be paid out of the treasury except on the warrant of the Auditor.*" There are some exceptions to this general provision, as in sections 1169 and 1170 of *The Code,* by force of which the Governor may draw his warrants in certain events, but there is nothing to affect the general rule in its application to this case. No *mandamus* will lie to compel the Treasurer to pay except upon his refusal to honor a warrant.

But it is contended that by virtue of the Act of 1893 the Treasurer becomes a trustee for the plaintiff and his associate counsel as to the money put into the State Treasury to be paid to them, and that this Court has the jurisdiction to enforce the performance of the trust.   And, in this view of the case, it is admitted by the plaintiff that if this were a claim against the State this suit could not be maintained.   But by examination of the aforesaid section 7 of the Act of 1893 this fund is to be paid into the *State Treasury,* out of which, as we have seen, no money can be paid but upon the warrant of the Auditor.   If there is a trust in this case, it is the State which is the trustee, and the State cannot be sued, except as provided in section 9, Article IV, of the Constitution.   It would hardly be contended that the State Treasurer is not liable on his official bond for the safe-keeping and disbursement of this particular fund.   If such be admitted, it follows that the Treasurer's trust is in favor of the State.   Besides, if by virtue of this act the Treasurer became a trustee for plaintiff, it would be a personal trust apart from his office.   No warrant from the Auditor would be required, and *mandamus* would not lie against him as an individual to compel its performance, there being other adequate remedy afforded him by law.

Since the argument, we have been referred by the learned counsel for the plaintiff to several authorities in other States bearing upon the question before us, but as the statutes of

those States may be different from those of our own, they cannot have weight with us against the clear and controlling enunciations of this Court to which we have referred.

In this case it will be seen that the Treasurer had already paid the plaintiff, presumably upon the warrant of the Auditor, the sum of $4,125.02, and the Auditor, in his answer, avers that the sum so paid is sufficient compensation for the services rendered by the plaintiff. It is not distinctly alleged in the complaint that there was a special contract between plaintiff and one authorized to make it fixing the amount of said compensation, although it is alleged that the amount charged by plaintiff for his fee was well understood by the Governor and Treasurer to be $5,000. It was, therefore, clearly committed to the Auditor to exercise his discretion in the examination and liquidation of the claim, and it may be that he declined to allow this further claim because he had already acted in the matter and made such allowance as in his judgment was proper, and, therefore, that there was no provision of law for a further payment. If there had never been any allowance made to plaintiff for his services, it might be that the refusal to audit the account, when it appeared to the Court that there was provision of law for its payment, would subject him to the jurisdiction of the Courts in this proceeding to command him to audit and make such allowance as he deemed proper, as in the cases cited in the opinion of the Court in *Sloan* v. *Warner*, 55 Wis., 271. But we do not think that under the statutes in this State the Court below would have been warranted in submitting an issue as to the value of the services to a jury, as was done in the case last cited.

Neither is there in our case a specific appropriation by statute of a sum certain to be paid to this plaintiff, and a direction to the Auditor to issue his warrant for the same, as in the case of *Sayer* v. *Moore*, 59 S. W. Rep., 755 (Nebraska), leaving but a ministerial duty to be performed, in which case we think the writ of *mandamus* would lie.

· Nor is there an admission of the correctness of the bill presented and of the existence of a special fund for its part payment, as in the case of *Journal Co.* v. *Boyd*, 36 Neb., 60, where it was intimated that the peremptory writ would issue to the defendant, the Governor, to issue his warrant upon said special fund, if it had not been made to appear that he was ready to issue such warrant.

The other cases cited seem to have been founded upon the statutes of the several States, and are not authority for the plaintiff's contention.

Some question was made as to the propriety of making the Governor a party to these proceedings, which it will be unnecessary for us to consider. Neither are we called upon to examine into the merits of the case. There is no error.

Affirmed.