The plaintiff sued for the recovery of $2,000, alleged to be the damages sustained by the cancellation of his policy, and the defendant's refusal to reinstate him. He had taken a policy in the defendant company for $3,000 upon his life for the benefit of his wife, and failed to remit his annual dues which were payable 24 July, 1901. The policy provides as follows: "In the event of a failure to pay either dues or assessments the day on which they shall become due, then in either case this certificate of membership and policy of insurance shall be ispofacto null and void, and of no effect whatever." The policy having been forfeited or having become void, as plaintiff admitted, by nonpayment of dues, he applied for reinstatement as a (56) policy-holder and member of the company, under Art. IX of sec. 7 of the company's by-laws, which is as follows: "Delinquent members may be reinstated if approved by the medical director and president, by giving reasonable assurances that they are in good health." It is declared in the policy that the by-laws are made a part of the contract to the same extent as if they had been inserted therein, and the rights and obligations of the respective parties are to be determined with reference thereto.
The plaintiff's application for reinstatement was accompanied by a certificate of his continued good health. The president of the company and the manager of its Reinstatement Department wrote to the plaintiff and his agent, T. G. Hyman, that the company would not reinstate him, the president in his letter stating his reasons for thus exercising his judgment against the granting or "approving" the application. Among other reasons given was the advanced age of the applicant, he being then about 68 years old, and it is suggested that it would not conduce to his interest nor that of the company for him to be readmitted as a member, because at his age his insurability on the mutual plan had ceased and his only proper course would be to seek some plan by which he could combine insurance with investment.
The Court charged the jury that under the agreement the plaintiff had a right to be reinstated if he made application, and further, that if the jury should find from the evidence he did apply for reinstatement and furnished evidence of his good health, and the defendant refused to reinstate him, the first issue should be answered "Yes." Defendant excepted.
The statute of limitations was pleaded, and in support of the plea it was shown that the defendant had domesticated under Laws 1899, ch. 62. Plaintiff's right of action accrued on or before 20 August, 1901. He commenced suit against the defendant by issuing a *Page 67 
summons 15 January, 1902, which was served 16 January, 1902, (57) but no pleading of any sort was ever filed in the case. The plaintiff was permitted to testify, over the defendant's objection, that the said suit was brought upon the cause of action declared on in this suit.
The Court instructed the jury upon the second issue, as to the statute of limitations, that the action brought by the plaintiff 15 January, 1902, arrested the operation of the statute, and that plaintiff had one year within which to bring a new action after the nonsuit in that case which was entered 23 November, 1903, that the summons in this case was issued 11 November, 1904, or eleven days before the one year expired, and if the jury find that to be the case they will answer the second issue "Yes."
The issues submitted and the answers thereto were as follows:
1. Did the defendant wrongfully refuse to reinstate the plaintiff's policy? Ans.: Yes.
2. Did the plaintiff's alleged cause of action accrue within three years before the bringing of this action? Ans.: Yes.
The damages were left to be settled by agreement of the counsel, and were afterwards fixed at two thousand dollars.
The defendant, at the close of plaintiff's testimony and again at the close of all the testimony, moved for judgment as of nonsuit under the statute. The motion was overruled, and it excepted. The defendant also moved for a new trial upon exceptions filed to the rulings of the Court. Motion overruled, and the defendant again excepted. Judgment was entered on the verdict, and the defendant appealed.
after stating the case: It is conceded that the plaintiff, under the terms of the contract of insurance, had forfeited his policy and consequently his membership, by the nonpayment of (58) his annual dues. He had no right to be restored to his former relation without the consent of the defendant, and then only upon the terms and conditions prescribed by it. There is a provision in this policy by which the plaintiff could be reinstated as a member and policyholder, but the condition precedent was imposed that his application for reinstatement shall first be approved by the president and medical director of the company, and that then he shall give reasonable assurance that he is still in good health. *Page 68 
It seems clear to us that the approval required in the case is something more than a mere ministerial act and involves the exercise of judgment and discretion. State v. Smith, 23 Mont. 44. The word "approve" is "to regard or pronounce as good; think or judge well of; admit the propriety or excellence of; be pleased with; commend." Webster's Intern. Dict.; 1 Words and Phrases, Jud. Def., 475. In the absence, certainly, of any showing that the approval of the officers has been fraudulently withheld and that their denial of the application is purely arbitrary, we do not see why their refusal to reinstate the plaintiff is not fatal to his right of recovery in this action. We are not called upon in this case to say under what circumstances, if any, we would decide that the action of the officers designated to pass upon the application of a delinquent member could be investigated, with a view to ascertain whether they have exercised their judgment properly or have unreasonably deprived him of any right to which he is entitled under the terms of his contract and the by-laws of the company. Where there is no suggestion of fraud or other legal wrong there can be no valid reason why the applicant should be permitted to attack the soundness of their judgment or the justiness of their conclusion. We must hold it to be right, and unassailable in any such manner, because the parties have solemnly agreed that the matter shall be (59) decided in that way, and we have no power to change their contract; and, besides, the power lodged with those officers is consistent with the purposes of the organization, and its exercise is necessary for the protection of the rights of other members and is not otherwise at all inconsistent with reason and justice. A provision for approval by officers most likely to know the facts is one which would naturally be suggested to those engaged in the prudent management of the affairs of the association as essential to conserve the interests of all parties concerned. The validity of such a clause in policies of this kind has been sustained by numerous authorities, and there are none, we believe, to the contrary. 2 Joyce on Ins., see. 1276; 2 Bacon Ben. Soc., sec. 385c;Butler v. Grand Lodge, 146 Cal. 172; Saerwin v. Jamon, 65 N.Y., Suppl., 501; Coniff v. Jamour, Ib., 317; Brun v. Supreme Council, 15 Col. App., 538; McLaughlin v. Supreme Council, 184 Mass. 298.
As the policy had been forfeited and plaintiff's connection with the defendant had been severed by his own default, he had no right to be readmitted to membership, but his reinstatement was then dependent upon the mere favor of the company, which could be extended to him subject to such terms as it deemed necessary for its protection. The *Page 69 
very question was decided in Harrington v. Keystone Assn., 190 Pa., 77, in which it appeared that the executive committee was "empowered" to reinstate a delinquent member. The Court there said: "Conceding, for the purpose of argument, that her application was in time, and that she complied or was ready and willing to fully comply with all the terms and conditions of the by-laws above quoted, it does not follow that the committee was bound to reinstate her to membership in the association. While the by-laws empowered them to grant her request they were not bound nor could they be compelled to do so. It neither clothed her with any legal or equitable right, nor did it impose any duty or obligation on the association that would enable her, as a delinquent member, to maintain this action." (60)
While it may not be necessary for us to go to the extent the Court did in that case, we yet think our case is stronger than that one so far as the discretionary nature of the power is concerned. In Lovick v. Life Assn.,110 N.C. 93 (cited and relied on by the plaintiff's counsel), the policy provided that the delinquent should have the "opportunity for reinstatement on similar conditions," the context showing clearly that the term "similar conditions" had reference to the payment of past-due premiums, assessments, and other indebtedness. By opportunity we mean "fit or convenient time; suitable occasion; time or place favorable for executing the purpose or doing the thing in question." Webster Int. Dict. It was, therefore, properly held in Lovick's case that if the plaintiff seasonably tendered the back dues, he was entitled to reinstatement, and, being thus entitled, he could recover the premiums paid, if the company refused to reinstate him. There was nothing in the policy then being construed which required the approval of the company or any of its officers as a condition precedent to the reinstatement or the exercise of any discretion or judgment.
The Court charged in this case that if the plaintiff applied for reinstatement and was refused after he had furnished proof of his good health, the first issue should be answered "Yes." In this there was error. The instruction excludes altogether from the consideration of the jury the question of approval by the president and medical director, and makes the recovery depend entirely upon the application and proof of good health, contrary to the very terms of the policy, and without any reference to the other valid provisions of the by-laws. This of itself entitles the defendant to a new trial. But as there was no evidence to warrant a verdict for the plaintiff, the Court should have granted the defendants motion to nonsuit, and dismissed the action, and there was error in refusing to do so. It is not necessary (61) *Page 70 
now to discuss the interesting question presented by the defendant's exception in regard to the statute of limitations, in view of the decision we have already made, that there has been no revival of the policy.
Error.
Cited: Page v. Junior Order, 153 N.C. 409.