(161 App. Div. 33)

## McCORMACK v. SECURITY MUTUAL LIFE INS. CO.

(Supreme Court, Appellate Division, Third Department.    March 4, 1914.)

1. INSURANCE (§ 354*)—LIFE INSURANCE—NOTICE.

Under Insurance Law (Consol. Laws, c. 28) § 92, requiring insurance companies to send notices that premiums are due, and providing that no insurance company shall declare any policy forfeited unless a written or printed notice, stating the amount of the premium due, the place and the

_____

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

person to whom it is payable, shall have been sent at least 15, and not more than 45, days prior to the day when the premium is payable, a notice that a premium is payable will not support a forfeiture, where it contained many alternative directions as to payment, and was incumbered by suggestions, intimations, and advice; the notice required by the statute being a danger signal which would not lull the insured into false security.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 908–911, 913; Dec. Dig. § 354.*]

**2. INSURANCE (§ 378*)—LIFE INSURANCE—POWER OF OFFICERS.**

Where the field superintendent and local cashier of the defendant insurance company consented to the reinstatement of a life policy after lapse in payment of premiums, with knowledge that the insured was hopelessly ill, such knowledge is chargeable to the company, and it cannot defeat recovery on the ground that a statement signed by the insured recited that he was in good health.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 968–997; Dec. Dig. § 378.*]

**3. INSURANCE (§ 365*)—LIFE INSURANCE—INCONTESTABILITY.**

A life policy contained a clause providing that it should be incontestable after the expiration of one year. It was forfeited for nonpayment of premiums, but was reinstated a few months later as of the date of the forfeiture, the company accepting the original check for the premium, which the insured's wife had negligently failed to mail. *Held*, that the policy as reinstated related back to the time of the forfeiture, and it became incontestable within one year after forfeiture.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 932, 933; Dec. Dig. § 365.*]

Smith, P. J., dissenting.

Appeal from Trial Term, Albany County.

Action by Agnes L. McCormack against the Security Mutual Life Insurance Company. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before SMITH, P. J., and KELLOGG, HOWARD, and WOODWARD, JJ.

Rollin B. Sanford, of Albany, for appellant.

Harvey D. Hinman, of Binghamton (Jay L. Gregory, of Binghamton, of counsel), for respondent.

HOWARD, J. In 1901 the Security Mutual Life Insurance Company wrote a policy for $2,000 on the life of John A. McCormack. He was then a sound and healthy man; afterwards he was stricken with a fatal malady, with which he suffered for several years and then died. On December 12, 1910, a quarter yearly premium became due and payable, with 30 days' grace. On November 12, 1910, a notice was sent out by the company and received by the assured, whereby the company undertook to apprise the assured of his obligation to make a premium payment on December 12th. Mrs. McCormack, the wife of the assured, the plaintiff herein, wrote a check on December 5th for the amount due, put it in an envelope, and directed the envelope to the company, but omitted to mail it. On February 13, 1911, the company notified the assured by letter of his default, and suggested that he arrange for a reinstatement of his policy. Mrs. McCormack

visited the office of the local agent, Miss M. F. Hearley, the person named in the notice, for the purpose of inquiring into the matter. She was told by Miss Hearley that a reinstatement of the policy was necessary, and that Mr. McCormack must certify that he was then in good health. Mrs. McCormack told the agent, so she says, that no such certificate could be made, for her husband was then and had been for years in bad health. But the assured did ultimately sign such a certificate, and was, in form, reinstated by the company. He died January 2, 1912.

[1] The defense to this action, brought on the policy, is that the policy was forfeited by the nonpayment of the premium due December 12, 1910, and that the reinstatement was procured by fraud and false statements. And so we must first inquire whether there was a forfeiture.

Section 92 of the Insurance Law requires insurance companies to send out to policy holders a notice that premiums are due. This section provides that no insurance company shall declare any policy forfeited—

"unless a written or printed notice stating the amount of such premium, * * * due on such policy, the place where it shall be paid, and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured * * * at least fifteen and not more than forty-five days prior to the day when the same is payable. The notice shall also state that unless such premium, then due, shall be paid to the corporation, or to the duly appointed agent or person authorized to collect such premium by or before the day it falls due, the policy and all payments thereon will become forfeited and void except as to the right to a surrender value or paid-up policy as in this chapter provided."

The notice which the company sent to the assured in this case reads:

"Security Mutual Life Insurance Company, Binghamton, N. Y.

"Dear Sir: On or before Dec. 12th, 1910, a premium payment of sixteen & $85/100$ dollars, for the regular $\frac{1}{4}$ yearly payment required to renew policy No. 34629 on the life of John A. McCormack in this company, will, if such policy be in force on that day, but not otherwise, become due and payable to the comptroller of the company at its office, Security Mutual Life Building, Binghamton, N. Y., and unless said premium shall be paid on or before said date, the policy and all payments made thereon will become forfeited and void, except that this notice shall not affect any right to paid-up or extended insurance, or to 30 days' grace, if provided for in the policy contract.

"The acceptance of any premium by the company after the date when due is subject to the condition that the insured is in good health, and an expressed warranty upon the part of the holder of the policy to that effect, and shall not be construed as a waiver of the conditions of the policy as to future payments, nor as establishing a course of dealing between the company and the holder of the policy.

"The sending of this notice shall not be held to waive any forfeiture or lapse of the policy, if any previous payment has not been made.

"No agent, collector, or other person, except the president, vice president, comptroller, or secretary, has authority to receive payment of a premium after it becomes due, or to extend the time for the payment of a premium, or to grant permits, or to make, alter, restore, or discharge policy contracts, or to waive any condition thereof.

"Dated Binghamton, N. Y., Nov. 12th, 1910.

"Return this receipt with your remittance.

"Chas. A. La 'Due, Secretary.

"All premiums are due at the office of the company in the city of Binghamton, N. Y., but for the convenience of policy holders payments may be made

ɔn or before the date when due to an authorized collector in exchange for the company's receipt therefor, signed by the secretary, and countersigned by the collector.

"Payment may be made to M. F. Hearley, 80 State Street, Albany, N. Y., authorized collector.

"Pay now and avoid overlooking it.    M. F. H."

It is unnecessary to analyze this notice. It is sufficient to say that in our judgment it does not comply with the statute either literally or substantially; this is apparent on its face. Its form, its verbiage, its surplusage; its suggestions, intimations, and advice, intermingled with the language of the statute, are all repugnant to directness and simplicity. The notice is intended to be, as the plaintiff's attorney has well expressed it, a "danger signal." But the danger signal is here confused with a dozen other signals. There is no excuse for this; no necessity for it. If the insurance company wishes to convey this additional information to its policy holders, it must do so at other times than when sending out premium notices, and on other papers. But it is urged that the plaintiff received the notice and attempted to act upon it, and therefore if it was in some degree defective, it served its purpose, and the plaintiff was not harmed. But neither was the company harmed by the default in payment; it received the same amount of money and the same identical check which it would have received if the premium had been paid when due. And we cannot be certain that the plaintiff was not harmed; the peculiar and ambiguous language of the notice may have lulled her somewhat into repose. She may not have been spurred on by fear of forfeiture, as perhaps she would have been by the simple, direct language of the statute. The law abhors the forfeiture of insurance policies on technical grounds, and in order to effect a forfeiture, the statute must be strictly complied with. This court has already taken a position on this subject. Flint v. Provident Life & Trust Co., 157 App. Div. 885, 141 N. Y. Supp. 1119. There is no reason to change that position now. The notice must be held to have been defective and insufficient to work a forfeiture.

[2] Having reached the conclusion that the policy was never forfeited, it is not strictly necessary to make further examination of this case. It may not be unprofitable, however, to do so. Although the adjudicated cases in this state are by no means harmonious on the subject, the weight of authority is to the effect that agents of insurance companies cannot, by any statements which they may make, waive or alter the written conditions of policies. But that rule is not controlling here, for the situation before us presents a different question. We are now to determine whether knowledge on the part of agents becomes knowledge on the part of the company. That is the question before us now. The jury has found in this case that two agents of the company —a local agent and a "field superintendent"—had full knowledge of the condition of health of the insured at the time the policy was reinstated. The finding of the jury cannot be doubted, for it comports with the probabilities of the case and with common knowledge as to the methods of insurance agents. The field superintendent, by his title of office, as well as by his testimony, appears to have been a representative of much importance in the company. His jurisdiction ex-

tended all over the United States. His duties were general and supervisory in character. If he knew of reasons why a person ought not to be reinstated, it was his duty, so he tells us, to report such information to the company. Under these conditions it should be held that knowledge on the part of this agent was knowledge on the part of the company. It follows that, the company, having full knowledge of the condition of health of the assured at the time it reinstated his policy, it is estopped from setting up as a defense the false statements in his application for reinstatement. The company knew that Mr. McCormack was desperately sick. Notwithstanding this, with its eyes wide open, it reinstated his policy. It cannot now complain.

[3] And there is still another feature of this case worthy of consideration. The process of reinstatement here consisted of the acceptance by the company of the orginal check drawn by the plaintiff for the payment of the premium and the delivery by the company of the original receipt to the plaintiff. No new written contract was executed. The "reinstatement" was a reissuance of the old policy. That is, the policy having ceased to exist, as the company claimed, on December 12, 1910, it did not make out a new policy when it resumed relations with the plaintiff, but issued the old policy over again, and dated it, in effect, December 12, 1910. This must be so, otherwise the amount received by the company in premiums between December 12, 1910, and about February 18, 1911, was money accepted and retained by the company when there was no policy in existence. This plan avoided all gaps and interims. The old policy, issued anew, was to bear date December 12, 1910. That this was the distinct understanding of the parties is clearly apparent. This being so, the incontestability clause must be held to apply to the "reinstated" policy with the same force and effect as it did to the original policy. This is equitable and just, and has been sanctioned by the Court of Appeals. Teeter v. United Life Insurance Association, 159 N. Y. 411, 54 N. E. 72. Therefore it follows that after one year from December 12, 1910, the policy was incontestable.

The judgment of the Trial Term should be reversed, and judgment for the relief demanded in the complaint rendered for the plaintiff, with costs.

We disapprove of the finding of fact made by the Trial Court, to the effect that the defendant duly rescinded the contract of insurance and reinstatement. All concur, except SMITH, P. J., dissenting and LYON, J., not sitting.

KELLOGG, J. (concurring). The jury has found that the general field superintendent, at the interview in February, 1911, and the cashier at and prior to that time, understood the condition of the health of the insured. The trial justice has not disturbed those findings, but, upon the theory that they had such knowledge, says the fact is immaterial under the authorities. The jury has believed the plaintiff rather than those officials. The plaintiff says the petition for reinstatement was made after the cashier knew of the ill health of the assured, and after plaintiff had informed her that she could not truthfully make the

petition, and that when she explained that the check had been put in the envelope, and she was surprised to find that it was not mailed, the cashier said she was very sorry about it, and "she knew the company would do what was right." After the petition had been forwarded the cashier called the plaintiff to her office and introduced her to the general field superintendent, and said that he had brought the reinstatement paper to her from Binghamton, the home of the company. He delivered it to her and said—

"knowing the condition of affairs, and knowing how very sick my husband was, that the company had done me a very great favor in reinstating him."

She had the right to believe, and evidently did believe, that he came to her as the representative of the home office to close the transaction with her. He had a general supervisory power over agents and to look out for the interests of the company wherever he is. He says—

"that if he knew an applicant was not entitled to reinstatement, it would be his duty to report the facts to the company at once."

If he was intrusted by the home office with a reinstatement to deliver, and delivered it to a party known by him to be in ill health, he bound the company, where the party has relied upon his acts. The plaintiff evidently had no exact knowledge of the powers of the superintendent or the cashier. She may have exaggerated the authority of the cashier, as over her desk, in large letters, was the placard "Security Mutual Life Insurance Company." That fact, and the fact that the superintendent brought the reinstatement papers from the home office, undoubtedly caused her to believe that she was dealing with the company. The correspondence between the cashier and the company with reference to the petition, the reinstatement, and the check is not in evidence. It was her duty to inform the company of the known condition of the insured. We must assume that she performed that duty, in the absence of proof to the contrary. There is no proof that she and the superintendent failed to perform their duties to the company. The medical examiner says he did not know, but the correspondence was not with him, and the superintendent did not report to him. The petition was simply handed over to him by the company for his consideration. If the company felt that under the circumstances it was not just or wise for it to contest its liability upon technical grounds, evidently it would not have informed the medical examiner, as his approval was desired. If the plaintiff is telling the truth about the attempt to mail the check and the reinstatement, the company would at least have been acting very technically and shortsightedly if it had refused reinstatement. The insured was helpless and failing in strength from day to day; the insurance was constantly in the mind of himself and wife; the default was purely accidental. If the company did not have knowledge of the condition of the health of the insured, the circumstances were such that it is estopped by the acts of its representatives under the circumstances shown.

At the time of the default the policy had a surrender value of $900; there was a note against it of $282. The husband was in a hopeless condition, and clearly could survive but a short time. If the company

had refused reinstatement, it would have been easy for her, in his condition of health, to borrow the amount of the loan upon the strength of the paid-up policy, which would have resulted, at the worst, in her receiving $618. The plaintiff had no intention to defraud the company. She was acting with its representatives, who knew the facts as well as she did; she believed they were honestly representing the company, and in fact were the company.

The cases relied upon by the respondent indicate that the cashier had not the power to bind the company by knowledge which she had and did not communicate to the company. We need not quarrel with them, for the fair inference is that the company had the knowledge. If the general field superintendent can bring from the home office and deliver a reinstatement to a dying man, under circumstances which render such delivery just and reasonable, and the company can avoid the effect of it after the assured, relying upon it, has allowed the time to obtain the surrender value on the policy to lapse, then technicality prevails over justice. I think the verdict of the jury, and the inferences fairly coming from it, indicate that the company had knowledge of the condition of the insured at the time it received the check for the premium in dispute, and that it is therefore liable on the policy.

The company received the check which had been drawn in December, and signed the receipt prepared for the December payment, giving it the date of December 10, 1910, and marking it "Reinstated." It was practically ignoring the fact that there had been a default, and was treating the matter as if the check had been received in due course of mail. It is not going too far, under all the circumstances, to say that the reinstatement was dated back as of December 10, 1910, and under the terms of the policy was incontestable.

In addition to the criticisms on the notice made by Justice HOWARD, it should be stated that the notice is conditional upon its face. It states that the premium will be due upon a certain day, if the policy is in force on that day. Why throw a doubt upon the validity of the policy? Why leave it to the assured to determine whether the premium is due on that day or not? The law required the company to give notice of the fact, and did not intend that whether the premium was due or not should be worked out in the mind of the insured. The law contemplates by the notice that it should, in substance, be a demand for the payment of a certain sum of money on a day stated. A demand by a plaintiff, as a basis for a replevin, that the property be delivered to him if he is the owner, and if he is entitled to the possession, is not the unequivocal positive demand which the law contemplates. It is not an absolute requirement that the property be delivered as matter of right. The party making a demand must lay aside all doubt, and by positive act assert his right. The statute contemplates that the notice shall only be given to those who have a legal policy, and that it shall be a positive statement that a certain sum of money is due on a date specified, and that a failure to make payment will avoid the policy.

The notice requires payment to the comptroller at Binghamton, and is signed by the secretary. A postscript, with the initials "M. F.

H.," authorized the payment to any authorized collecting agent having a receipt. We do not know how many such agents there are. It also states that payment may be made to M. F. Hearley, authorized collector, at Albany. This was confusing. A technical effect is sought to be given to the notice; it, therefore, should comply with the law. The court cannot be called upon to help it out. I, therefore, favor a reversal and judgment for the plaintiff.

SMITH, P. J. (dissenting). Whatever may be the hardship of this particular case, this judgment cannot be reversed without revolutionizing the law of contracts. If the statute had required a notice for the payment of premiums to be in any particular form, it would so have prescribed. That the notice required by the statute is embodied in the notice sent is unquestioned. That other matters included in the notice can be held to vitiate the notice given, in my judgment, does violence both to law and reason. The holding that the knowledge of the field superintendent, so-called, was the knowledge of the company, for the purpose of holding the company estopped, goes further than any case has ever gone in this state, or any other state, in the construction of life insurance contracts, and is a judicial abrogation of the contract made between the parties that a waiver can only be made by certain officers of the company, of whom the field superintendent was not one. Furthermore, the holding that the false representation made in the statement for a renewal of the insurance did not vitiate such insurance not only goes beyond all authority, but is condemned by the reasoning in those cases which have held that the knowledge of the medical examiner in certain cases as to the condition of the insured may be held to estop the company in case of a false statement made by such medical examiner and innocently approved by the party seeking insurance. The opinion in the case of Hook v. Michigan Life Insurance Co., in 44 Misc. Rep. 478, 90 N. Y. Supp. 56, shows clearly that the rule of estoppel has never been applied to forbid companies to claim exemption by reason of false statements in the application for insurance, where the statement was made by the party himself, knowing the same to be false. This decision was approved unanimously by this court in 139 App. Div. 922, 123 N. Y. Supp. 1121.

Nor do I think the plaintiff is saved by the nonforfeiture clause in the contract. The reinstatement was in fact made in February of 1911. He died in January of the year following, so that one full year had not in fact passed since the reinstatement. There is not one particle of evidence to show that the company intended to make the reinstatement effectual as of any prior date. The check which was received was dated before the forfeiture. The check, of course, did not bear interest, and it might have been dated back. In any event its date is immaterial. The fact that the reinstatement involved the payment of premiums as upon the original contract cannot date back the renewal contract for the purpose only of making applicable the nonforfeiture clause, without facts authorizing a finding that it was so intended by both parties to the contract.

I, therefore, vote for an affirmance of this judgment.