FRANK KEY ET AL. v. BOARD OF EDUCATION OF GRANVILLE COUNTY.

(Filed 17 November, 1915.)

**1. School Districts—Discretionary Powers—Mandamus.**

The courts may compel the county board of education to act upon discretionary powers conferred on them by the Legislature, but cannot tell them how they must act.

**2. Same—Elections—Abolishing District—Endorsement and Approval—Interpretation of Statutes.**

Revisal, sec. 4115, as amended by chapter 524, Laws 1909, and chapter 135, Laws 1911, requires that where school districts have been established, the question of revoking the tax and abolishing the district shall be submitted to the electorate of the district upon a petition of two-thirds of the qualified voters therein, when endorsed and approved by the county board of education: *Held*, the requirement that the endorsement and approval of the board of education shall first be had confers on this board the exercise of a judicial or discretionary power necessarily implied from the use of the word "approved," and where it has acted upon the petition and in the unarbitrary exercise of this power has refused to order the election, the courts are without authority to compel them by mandamus to "endorse and approve" the election proposed.

**3. Same—Prerequisites—Statutory Requirements.**

It is a prerequisite to the valid ordering of an election by the county commissioners upon the question of revoking the tax and abolishing a school district, that the statutory requirements be first met, *i. e.,* that the petition be signed and endorsed and approved by the county board of education as specified by the statutes; and such election otherwise ordered by the county commissioners will be ineffectual.

ALLEN, J., dissenting; BROWN, J., concurring in the dissenting opinion.

APPEAL by defendants from *Cooke, J.,* 9 February, 1915, from GRANVILLE.

Civil action to obtain a mandamus on defendant board, compelling them to "endorse and approve" a petition to the board of commissioners of Granville County, that they order an election on the question of the annulment of a special school tax district in said county and known as "Stovall Special Tax District, No. 2," heard on demurrer.

The complaint alleged that the said district was duly established in 1908 and had continued to operate under the law, section 4115, Revisal, until the present year, when a petition, signed by two-thirds of the qualified voters of said district, requesting the county commissioners to order an election on the question of revoking said school district, was presented to the defendants, the board of education of Granville County, with the request that said board "endorse and approve" said petition.

The complaint then contains further averment as follows: "That the board of education considered the said matter and, after some hesitation and delay, declined and refused to endorse and approve said petition and does still decline and refuse to endorse and approve the same, contrary to the express requirement of the statute above mentioned," and further:

"6. Your petitioners are informed and believe that the county commissioners are without authority to order the election demanded unless the petition therefor is endorsed and approved by the county board of education, the defendant, and that in the absence of such endorsement and approval by the said county board of education, your petitioners are without remedy against the tax levy referred to; whereas, if said petition should be endorsed and approved by said defendant your petitioners might be speedily relieved of the same.

"7. And your petitioners are advised that the defendant has no right or authority to withhold its endorsement and approval of said petition, but is bound, upon the showing made, to endorse and approve the same. The defendant did not refuse its endorsement and approval of said petition on account of any defect in the petition or any lack of numbers of signers."

Defendant board demurred to the complaint in terms as follows:

"For that the declarations stated in complaint of the plaintiffs in this action, and the matters therein set out, in manner and form appearing

as above, are not sufficient for the said plaintiffs to have and maintain their aforesaid action against said defendant board, and that the said defendant board of education declined to endorse the petition as set out in said complaint in the exercise of a sound and reasonable discretion, and demur to the said complaint and ask that it be dismissed.

"Wherefore, for want of a sufficient declaration in this behalf, the said defendant board prays judgment that the said plaintiffs may be barred from having or maintaining the aforesaid action against said defendant board, and that the plaintiffs herein named be required to pay the costs of this proceeding."

There was judgment overruling the demurrer and commanding defendant board to endorse and approve the petition as prayed for in the complaint, whereupon defendants, having duly excepted, appealed.

*T. T. Hicks for plaintiffs.*
*B. S. Royster and B. K. Lassiter for defendant.*

HOKE, J., after stating the case: The statute authorizing the formation of these special school districts, Revisal, sec. 4115, has been so amended by chapter 524, Laws 1909, chapter 135, Laws 1911, that on petition of two-thirds of the qualified voters residing in any special taxing district, "endorsed and approved by the county board of education," the board of county commissioners shall order an election in said district for submitting the question of revoking said tax and abolishing said district," etc. It has been held that, as an essential requirement to a valid election, this preliminary petition must be properly preferred (*Gill v. Comrs.,* 160 N. C., 176), and the question presented is whether, on the facts as alleged in the complaint, the county board of education may be compelled by mandamus to "endorse and approve" the petition.

It is the recognized principle with us, upheld and approved in numerous decisions of this Court, that where discretionary powers are conferred on these ministerial boards, the court may not undertake to direct them as to how such powers shall be exercised in a given case. They may compel such a board to act in the premises, but cannot tell them how they must act. *Edgerton v. Kirby,* 156 N. C., 347-351; *Board of Education v. Comrs.,* 150 N. C., 116-123; *Ward v. Comrs.,* 146 N. C., 534; *Burton v. Furman,* 115 N. C., 166; *Broadnax v. Groom,* 64 N. C., 244; *Atty.-Gen. v. Justices,* 27 N. C., 315; Abbott on Mun. Corp., sec. 1108; High on Extr. Legal Remedies, 2 Ed., sec. 24. In the citation to High on Extr. Legal Remedies, quoted with approval in *Board of Education v. Comrs., supra,* the principle is correctly stated as follows: "But the most important principle to be observed in the exercise of jurisdiction by *mandamus,* and one which lies at the very foundation of the entire system of rules and principles regulating the

use of this extraordinary remedy, is that which fixes the distinction between duties of a peremptory or mandatory nature and those which are discretionary in their character, involving the exercise of some degree of judgment on the part of the officer or body against whom the *mandamus* is sought. . . . And whenever such officers or bodies are vested with discretionary powers as to the performance of any duty required at their hands, or when in reaching a given result of official action they are necessarily obliged to use some degree of judgment and discretion, while *mandamus* will lie to set them in motion and to compel action upon the matters in controversy, it will in no manner interfere with the exercise of such discretion or control or dictate the judgment or decision which shall be reached." And again, in section 34: "An important distinction to be observed in the outset, and which will more fully appear hereafter, is that between duties which are peremptory and absolute, and hence merely ministerial in their nature, and those which involve the exercise of some degree of official discretion and judgment upon the part of the officers charged with their performance. As regards the latter class of duties, concerning which the officer is vested with discretionary powers, while the writ may properly command him to act or may set him in motion, it will not further control or interfere with this action, nor will it direct him to act in any specific manner."

In the present case it is not alleged that the board of education has refused to act on the question presented, nor even that they have acted arbitrarily. On the contrary, the averment in the complaint relevant to the point is that the board of education "considered the matter and, after some hesitation and delay, refused to endorse and approve the petition," and, from a perusal of the subsequent and additional allegations of the complaint, it will appear that the suit proceeds upon the idea that the duties of the board of education are merely ministerial, being confined to ascertaining if the signers of the petition are resident within the district and whether they constitute two-thirds in number of the resident voters. But, in our opinion, such a position cannot be sustained. In a case like the present, the primary and controlling significance of the word "approve" imports the exercise of judgment. This is true as a matter of linguistic definition and, on reason as well as authority, we must hold that, in requiring as a preliminary essential that the petition shall be "endorsed and approved" by the board, the statute conferred and intended to confer upon that body the power to give or withhold their approval as their judgment may dictate, having regard to the best interest of the community affected (*Lane v. Ins. Co.,* 142 N. C., 55; *S. v. Smith,* 23 Montana, 44; *Costner v. Calusa County,* 58 Cal., 274-275), the purpose evidently being that, when one of these taxing districts had been formally established, it should not be revoked

unless the two interests more directly involved and best acquainted with conditions should concur in the movement to have the same annulled.

The authorities cited in the learned brief of counsel for appellee were cases where the powers conferred were held to be purely ministerial and the right to *mandamus* was very clearly established.

There was error in overruling the demurrer and, on the record, there should be judgment that defendant go without day.

Reversed.

ALLEN, J., dissenting: I concur in the general principles stated in the opinion of the Court, but I think they have no application to the statute before us.

The General Assembly at first provided for elections to be held in school districts, upon petition, to ascertain if the voters would consent to the levy of a special tax for school purposes. The object of the statute was to stimulate interest in education and to afford an opportunity to those who desired better school facilities to obtain them; but it was soon found that many were unwilling to vote for the tax if they could not get rid of it, if they became dissatisfied or reached the conclusion that it was no longer necessary, and the original act was amended in 1909 and 1911 by adding thereto the following:

"Upon petition of two-thirds of the qualified voters residing in any special tax district established under this section, endorsed and approved by the county board of education, the board of county commissioners shall order another election in said district for submitting the question of revoking said tax and abolishing said district, to be held under the provisions prescribed in this section for holding other elections: *Provided,* that no election for revoking a special tax in any special tax district shall be ordered and held in said district within less than two years from the date of the election at which the tax was voted and the district established, nor at any time within less than two years after the date of the last election on said question in said district; and no petition revoking such tax shall be approved by the county board of education oftener than once in two years."

The dominant and controlling purpose of the act as amended is that the people of a school district may by popular vote determine for themselves the wisdom and expediency of levying, in the first instance, and of discontinuing the tax, and I cannot think it was the intention of the General Assembly to invest the board of education, a nonelective body, with authority, as a supervising guardian, to thwart this purpose.

The people have the right to a vote—the statute says so—but, under the construction placed on the statute by the Court, the board of educa-

tion may, without giving any reason for its action, say to them, "You shall not vote," although the requirements of the statute have been complied with.

Why give the right to hold an election if this is what was meant by the Legislature? It would have been simpler and less misleading to have provided that the tax should be discontinued when so ordered by the board of education.

What, then, is the meaning of the language "endorsed and approved by the county board of education"? The county board has charge of the schools of the county, and knows the boundaries and patrons of the districts better than any other official body. It also knows when and where elections have been held. It was necessary that some one should examine and scrutinize the petition to see if in fact two-thirds of the voters of the district had signed it, and also to ascertain if a school election had been held within two years.

These duties are imposed by the statute on the board of education, and when they have been performed, they can, in my opinion, be compelled to endorse and approve, and thereby make effective the real purpose of the statute, and not defeat it.

Did the General Assembly intend to say to the people, "Vote for a special tax for schools, and after you have tried it two years if you are dissatisfied or think the tax no longer necessary you may hold another election on the question if you satisfy the board of education that two-thirds of the voters desire it," or, "Vote for the tax, and after you have tried it two years you may hold another election if the board of education will permit the election to be held"?

I think the first construction the better.

BROWN, J., concurs in dissenting opinion.