### LANIER et al. v. NEW YORK LIFE INS. CO.*

No. 8204.

Circuit Court of Appeals, Fifth Circuit.

Feb. 24, 1937.

Rehearing Denied March 22, 1937.

*Writ of certiorari denied 57 S.Ct. 795, 81 L.Ed. ——.

John E. Mathews, of Jacksonville, Fla., for appellants.

Charles Cook Howell, of Jacksonville, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The decree canceled four insurance policies, issued by New York Life Insurance Company upon the life of Virgil H. Lanier, because of false statements in applications for their reinstatement. The main questions in dispute are whether the misstatements were material, and whether the two-year incontestable clause bars the company from attacking the reinstatements; and as pertinent to the latter question whether the reinstatements occurred on receipt of the proofs of health at the home office or only after review and approval there, and whether a "contest" by the company occurred prior to the filing of its answers.

The evidence, taken by an examiner, is not conflicting except on the point of the materiality of the misstatements. It is not disputed that four policies, one for $10,000 and three for $5,000 each, were issued March 30, 1932, that they lapsed for nonpayment of premium Sept. 30, 1933, and that separate applications for reinstatement were made on blanks furnished by the company through its agent at Jacksonville, Fla., styled "cashier," accompanied with letters from the cashier requesting their return to him when executed. One application was dated November 3, 1933, was stamped "Received,

Florida Branch, Nov. 3, 1933, New York Life Insurance Company," and indorsed "Approved by J. F. Roney, Cashier, on the 6th day of November, 1933." Another was made and received November 10th and approved November 14th. A third was dated November 24th, received November 25th, and approved November 27th. The fourth was dated and received December 1st and approved December 4th. With each one the cashier accepted the premium payment necessary for reinstatement. They were severally received at the home office November 7, November 19, December 2, and December 7. They went through the Comptroller's Department, and on December 7th, since $25,000 then appeared to be involved, they went to the Renewing Division. They were finally approved in the home office on January 3, 1934, and the Jacksonville cashier so notified. No notice of any kind was given Lanier or any beneficiary or assignee, nor was any customarily given. To a question included in each application blank as follows: "Within the past two years have you had any illness, diseases or bodily injuries, or have you consulted or been treated by any physician or physicians?" Lanier answered "No." In truth, he had been treated by a skin specialist in the removal by one application of radium of a small scaly spot on his cheek in July, 1933. In August, 1934, Lanier developed a gland trouble in his throat, later diagnosed as cancer, from which he died January 6, 1936. In May, 1935, he made claim under his policies for disability benefits. On June 20, 1935, he was notified by the company that it had rescinded the reinstatements of his policies because of the misrepresentation in the reinstatement applications, and it tendered return of premiums. Lanier refused the return of premiums, contending there was no right to cancel his insurance. He and others claiming as assignees of his policies filed suits in equity in the Florida courts in August, 1935, praying a decree that the notices of recission and cancellation given June 20th were void and the policies in full force and effect. These complainants also filed in the state court a proceeding to perpetuate the testimony of Lanier, the company filing cross-interrogatories and the testimony being taken September 23, 1935. The suits were removed to the United States District Court and a stipulation was made to take Lanier's testimony orally and it

was so taken on September 3. The company in the District Court filed motions to dismiss and to strike portions of the bills. The bills were amended to meet some of the objections on December 3d, and on December 4th the complainants served notice on defendant's counsel of an intention to file supplemental bills pleading that, because of the incontestable clause in the policies, the company was then debarred from contesting the policies, no contest having yet been made. Thereafter, on December 20, 1935, the company filed answers which contended that the rescission of the reinstatements was justified, that the proceedings already taken constituted a contest, and if not, that the answers were within two years of the reinstatements and in time, and it was affirmatively prayed that the rescissions be set up and the policies judicially canceled. Lanier having died in January, 1936, his executor was made party and prayed recovery on the policies. The cases were consolidated and a single trial and decree was had.

▌ In order to apply the incontestable clause, it will be helpful to see how and when the reinstatements occurred. They were not wholly new and independent agreements. Each policy, after providing that the insurance should lapse on default in paying a premium, added: "This policy may be reinstated at any time within five years after default upon presentation at the home office of evidence of insurability satisfactory to the Company and payment of overdue premiums with six percent interest thereon from their due date." Such a provision, common in policies, helps to sell them, and it means, not that the insurer may possibly at its option reinstate, but that it will do so if in the time limited back premiums are paid and if evidence of then insurability is furnished at the home office such as is satisfactory to the company. It has been said that reinstatement when the conditions are met is a positive right and may be specifically enforced. Mutual Life Ins. Co. v. Lovejoy, 203 Ala. 452, 83 So. 591. See, also, Leonard v. Prudential Ins. Co., 128 Wis. 348, 107 N.W. 646, 116 Am. St. Rep. 50. But the stipulation that the company shall have evidence of insurability satisfactory to it is a real and a reasonable qualification. The company need not reassume its obligations if it honestly thinks the risk is no longer a proper one.

It probably could not refuse for some collateral reason, as that it wished to reduce its outstanding insurance or to withdraw from the state, nor capriciously and without any reason. But one who contracts that he shall be satisfied touching a matter of opinion or judgment is entitled to satisfaction. Shepherd v. Union Central Life Ins. Co. (C.C.A.) 74 F.(2d) 180, and authorities cited. The reservation that an insurance company shall be satisfied with the evidence of insurability fairly implies that it shall have the evidence put before an agent authorized to consider it and with opportunity to weigh it. But, if it proves satisfactory, it may have effect from the time it was tendered if that is the intent of the contract. We think that a reinstatement under the agreement before us is not automatic, but is a transaction requiring a meeting of minds, and to that extent it has elements of a new contract. Compare Broughton v. Equitable Life Assur. Co. (C.C.A.) 71 F.(2d) 821; Fidelity Mutual Life Ins. Co. v. Merchants' & Mechanics' Bank (C.C.A.) 71 F.(2d) 777. But it results in putting the old contract back into force with its premium rates and premium dates and its general provisions unchanged. Pursuant to a conditional promise in the policy to do so, it wipes out the default in premiums as though it had not occurred. In view of what is said in Aetna Life Ins. Co. v. Dunken, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342, we should hesitate to call it a new contract. It arises not under the rules applying to a new negotiation by offer and acceptance but according to the policy provision on which it is based.

Each policy, then, promised reinstatement on stated conditions. There is no question but that all requirements for reinstatement of each policy were finally met, and that reinstatement was accomplished; the only question is when. In McCormack v. Security Mutual Life Ins. Co., 161 App.Div. 33, 146 N.Y.S. 613, it was held with reference to an incontestable clause that a reinstatement related back to the time of the default which it wiped out, and the limitation on contest was to be computed from that date. On appeal this holding was reversed, and the date that reinstatement actually occurred was held controlling. 220 N.Y. 447, 116 N.E. 74, 75. We agree. The rejected rule would be manifestly impracticable and unjust, for in the policy before us the right of reinstatement continues for five years from default but the period for contest is limited to two. The contest period is designed to give opportunity for investigation and would reasonably begin when the transaction which is to be investigated takes place.

Looking at the reinstatement clause, it stipulates for two things: (a) Presentation at the home office of satisfactory evidence of insurability; (b) payment with interest of overdue premiums. Until the policyholder has done these two things, he can claim no right to reinstatement. The payments are not here disputed, and they occurred first. The evidences of insurability were in form satisfactory to the company, because on blanks sent out by it and stating exactly what was asked for, and were presented at the home office at dates already stated, the last on December 7th. They were all formally approved by the cashier at Jacksonville, the approval necessarily meaning that they were satisfactory to him. No dissatisfaction or question was raised in the home office as the reinstatements came in, but after all had come they were reviewed, investigated, and found satisfactory. No notice of their approval was ever given the insured, and none was customary. If we treat the cashier's approval as only recommendatory and the home office approval as necessary, still it would be fair to treat the latter as applying from the date of receipt of the evidence at the home office. That is the last thing mentioned in the policy provision. The insured was to do nothing more and to receive nothing more, not even a notice. When after a reasonable time no dissatisfaction had been communicated to him, satisfaction ought to be understood from the date the evidence was presented at the home office, no other certain date being fixable. To be distinguished are such cases as Kennedy v. The Grand Fraternity, 36 Mont. 325, 92 P. 971, 25 L.R.A.(N.S.) 78, where approval by the secretary was stipulated in the reinstatement clause, and Lane v. Fidelity Mutual Life Ins. Co., 142 N.C. 55, 54 S.E. 854, 115 Am.St.Rep. 729, where approval by the medical director was mentioned.

But we think the record shows that the Jacksonville cashier was fully authorized to express final satisfaction for the

company and did so by accepting unconditionally the premiums offered and ·indorsing his approval on the applications and sending them to the home office, not to be approved but as already approved. The printed application blanks sent him by the company, which he filled out, concluded: "Approved by ———, Cashier, on the ——— day of ———, 19—", and contained no form for approval by any one else. This meant to him and to the insured that he was to pass on the reinstatements. His authority to do so is clearly set forth in the general instructions governing his office: "Cashiers may approve Form 4778 for reinstatements of $10,000 or less (except impaired risks) (a) when application for reinstatement is made within three months after due date of premium. * * * Provided Form 4778 has been carefully examined and there are no exceptions or qualifications to insured's statement which has been properly signed and dated by him as well as duly witnessed." Each of these applications was Form 4778 for not more than $10,000, made within three months from default, the statements in which were made without exceptions or qualifications and were duly signed, dated, and witnessed. The cashier had authority to express· satisfaction for his company as to each by approving it and accepting the money. It may be true, as is argued, that if all had been presented at one time more than $10,000 of insurance would be involved, and the cashier could not act. But the reinstatements were of separate policies, were separately solicited by the company, and were sought by separate applications a week or more apart. When confronted with the first one, the cashier did not know that another· would follow, but approved it and sent it in, as he ·was authorized to do. So each of the others. There is no evidence and no claim that separate presentation was made through any collusion with the cashier or with any unfair purpose. Since a new assignee or beneficiary was brought into each policy, it may be that some separate arrangement was thereby made for raising the necessary money to reinstate each. What was said in the original application for insurance that only the president or other named officer has authority to make, modify, or discharge contracts or waive the company's rights, and in the policy that no agent is authorized to make or modify

the contract, does not apply to a reinstatement. It is not a modification but a performance of the policy contract. As to it the company has made special rules, the one giving authority to its cashiers having been quoted above. Several witnesses from the home office, as well as the cashier, testified and none claimed that the president or other superior officer customarily passed on a reinstatement but all said this cashier's conduct was regular if only $10,000 of insurance were involved. We think that each approval by the cashier was within his authority when made, and its effect was not nullified because the home office later saw fit in view of the aggregate amount to reconsider it. All that happened at last was to ratify what the cashier had done. We conclude that in any view of the matter the receipt of each application at the home office fixed the date of reinstatement.

■ The incontestable clause agreement is: "This policy shall be incontestable after two years from its date of issue except for nonpayment of premium." The language does not well fit a reinstatement. But the courts from the beginning of such clauses in an endeavor to find the real intention have concluded that they should not hold on the one hand that contest of a reinstatement transaction was excluded when the original policy was too old according to the literal words, nor on the other hand that there is no incontestable provision at all for a reinstatement. The middle ground is taken that the parties intend that there shall be a similar period to contest the reinstatement beginning when the reinstatement occurs instead of at the date of issue of the policy. This is well stated, and the older cases reviewed, in Great Western Life Ins. Co. v. Snaveley (C.C.A.) 206 F. 20, 46 L.R.A.(N.S.) 1056, decided in 1913. See, also, State Life Ins. Co. v. Spencer, 62 F.(2d) 641. The persistence of such clauses without change indicates that the construction is the true one. The present reinstatements must therefore have been contested within two years from their respective dates as above fixed.

■ "A 'contest' within the purview of such a contract has generally been held to mean a present contest in a court, not a notice of repudiation or of a contest to be waged thereafter." American

Life Ins. Co. v. Stewart, 57 S.Ct. 377, 379, 81 L.Ed. ——. This court has so held. Northwestern Mutual Life Ins. Co. v. Pickering (C.C.A.) 293 F. 496; Scharlach v. Pacific Mutual Life Ins. Co. (C.C.A.) 9 F.(2d) 317. In both the Pickering and Scharlach Cases suits were brought on the policies affirming that the insurer would not perform them, and the answer of the insurer setting up the invalidity of the policy as his reason for not performing was considered to be the date of contest, though there had been previous repudiation. The insurer can of course, as held in the Stewart Case, make a contest also by suing to cancel the policy. Most of the cases speak of these two as the only modes of contest. In none, however, does it appear that the exact question has been decided which is here made, whether a suit by the insured to compel recognition of the policy based on the insurer's repudiation of it would be a contest or whether the removal of it to the federal court or the filing of a motion to dismiss it or the taking of testimony by the insured would amount to a contest by the insurer. We say no. What counts is contest by the insurer in court on pleaded grounds, and not attempted enforcement by the insured or beneficiary. Every suit on a policy is an assertion by the plaintiff that the policy is valid and that the insurer will not recognize it; but uniformly it is held that the answer asserting invalidity fixes the date of the contest. Missouri State Life Ins. Co. v. Cranford, 161 Ark. 602, 257 S.W. 66, 31 A.L.R. 93; Killian v. Metropolitan Life Ins. Co., 251 N.Y. 44, 166 N.E. 798, 64 A.L.R. 956; Humpston v. State Mutual Life Assur. Co., 148 Tenn. 439, 256 S.W. 438, 31 A. L.R. 78, Lanier, before his policies could be sued on, went into equity to assert that they were valid, although the company had repudiated them. This no more made a contest by the company than if a money judgment had been asked. There was nothing to prevent the company from refusing to contest the policies. When it removed the cause to the federal court, it committed itself to nothing. Its motions to dismiss, unlike an old-fashioned demurrer which admitted the facts and asked judgment on the law, complained that the bills were vague and full of conclusions and "from aught that appears from the facts alleged the defendant's rescission of the insured's application for reinstatement was justified and legal." This was a contest of the plaintiff's pleadings, but not a contest of his policies. The complainant went about saving his testimony for a possible trial, but we are unable to hold that the cross-examination of witnesses by the insurer was a contest by it of the policies. Until the company filed answers on December 20th, it had never said to any court what position it was going to take about the validity of the policies or asked any court to annul them. This was the first contest of the policies by the company and it was too late.

So concluding, we need express no opinion on the merits of the contest or the sufficiency of the showing that there was material misrepresentation. The judgment is reversed and cause remanded for further proceedings not inconsistent herewith.

HUTCHESON, Circuit Judge (specially concurring).

I agree with my associates that the decree should be reversed. I think that they have taken untenable ground. Conceding that the weight of authority supports the view that the incontestable clause requires contest in court, and that in an ordinary suit at law this defense must be made in the answer, it must be remembered as to this suit that it was not at law on the policy but in equity to compel restoration of reinstatement of policies alleged to have been canceled for fraud in procurement. Not only so, but there was a mass of testimony taken on this issue long before the two years was up. I believe the decisions already written on this matter of contest have pressed the clause in question to the verge of the extreme limits of a common sense view.

Our decision seems to me to go far beyond them. To say of a suit brought in equity to reinstate a policy canceled for fraud in which the petition declaring on the cancellation sets up the grounds of its doing and in which the parties take voluminous testimony is not a contest is in my opinion to say that what is so is not so.

I shall not extend these views, however, for I think the right result was reached. I am of the opinion that the evidence taken as a whole does not support the contest, does not admit of the

rational conclusion that the reinstatement was secured by material misrepresentations.