STATE OF NEBRASKA, EX REL. SCHOOL DISTRICT OF
OMAHA, V. MAYOR AND CITY COUNCIL OF THE
CITY OF OMAHA.

FILED MARCH 20, 1894.   NO. 6773.

1. **School Tax**: BOARD OF EDUCATION: CITY COUNCIL.  Section
21 of subdivision 17, chapter 79, Compiled Statutes, relating to
schools in metropolitan cities, does not grant to the board of ed-
ucation authority to determine what amount of funds must be
raised by taxation for the support of schools, or what levy is re-
quired for that purpose, but it requires the board of education
to report to the city council an estimate of the total amount of
funds required for the purposes specified in the section, and
leaves with the city council the power to determine what pro-
portion of this amount will be realized from sources other than
taxation, what amount it is necessary to raise by taxation, and
the levy required for that purpose.

2. ———: MANDAMUS TO CITY COUNCIL.  Therefore, where the
board of education reports to the council the total amount of
funds required, with an estimate of the proportion thereof
which it will be necessary to raise by taxation, the council can-
not by *mandamus* be required to make a levy sufficient to raise
the amount so reported as necessary to be raised by taxation.

ORIGINAL application for *mandamus*.

*James B. Meikle*, for relator, cited: *State v. Smith*, 11
Wis., 65; *People v. Bennett*, 54 Barb. [N. Y.], 480; *Atkins
v. Disintegrating Co.*, 18 Wall. [U. S.], 301; *Taylor v. Tay-
lor*, 10 Minn. 107; *Bourland v. Hildreth*, 26 Cal., 182;
*Kennedy v. Gibson*, 8 Wall. [U. S.], 498; *Donohue v. Ladd*,
31 Minn., 244; *Big Black Creek Improvement Co. v. Com-
monwealth*, 94 Pa. St., 455; *Follmer v. Nuckolls County*, 6
Neb., 204; *People v. Commissioners of the Ill. & M. Canal*,
3 Scam. [Ill.], 153; *Mayor of Jeffersonville v. Weems*, 5 Ind.,
547; *Commissioners of La Grange County v. Cutler*, 6 Ind.,
354; *Stayton v. Hulings*, 7 Ind., 144; *Hedrick v. Kramer*,
43 Ind., 362; *State v. Forkner*, 70 Ind., 241; *Bell v. Davis*,

75 Ind., 314; *State v. Canton*, 43 Mo., 48; *People v. La-combe*, 99 N. Y., 43; *People v. Commissioners of Taxes of New York City*, 95 N. Y., 558; *Burch v. Newbury*, 10 N. Y., 389; *Oswego Starch Factory v. Dolloway*, 21 N. Y., 461; *Donaldson v. Wood*, 22 Wend. [N. Y.], 397; *Water-vliet Turnpike Co. v. McKean*, 6 Hill [N. Y.], 619; *Commonwealth v. Kimball*, 24 Pick. [Mass.], 370.

*W. J. Connell*, City Attorney, contra, cited: *Kemerer v. State*, 7 Neb., 130; *People v. Yeates*, 40 Ill , 126; Merrill, Mandamus, sec. 291; *Smails v. White*, 4 Neb., 353; *In re House. Roll No. 284*, 31 Neb., 505; *Sovereign v. State*, 7 Neb., 412.


IRVINE, C.

The facts in this case are undisputed.    Omaha is a city of the metropolitan class, and by virtue of subdivision 17 of chapter 79, Compiled Statutes, the territory embraced in that city is constituted a corporation for school purposes, governed by a board of education.    The board of education, on the 22d day of January, 1894, made an estimate of the amount of funds required for school purposes, and on the following day reported that estimate to the city council.    This estimate contained items of proposed expenditures amounting to $389,351.·   As against this there were itemized estimates of resources other than from taxation, and an item "to be made up by taxation, $70,000." This was followed by an estimate that it would require a levy of three and one-half mills on the dollar to supply this amount, and a request was made to the council that a levy to that amount should be made.    The assessed valuation of the city of Omaha is $20,322,201.    Upon the 6th of February an ordinance was passed by the city council making a levy of taxes for numerous purposes, including therein a levy of three mills on the dollar for the school district. The relator seeks to compel the mayor and council to make

a levy of three and one-half mills, or such a levy as will be sufficient to raise the sum of $70,000. The statute under which the relator claims authority to require this levy is as follows : " That the board of education shall annually, during the month of January, report to the city council an estimate of the amounts of funds required for the support of the schools, for the purchase of school sites, the erection and furnishing of school buildings, the payment of interest upon all bonds issued for school purposes, and the creation of a sinking fund for the payment of such indebtedness, and the city council is hereby authorized and required to levy and collect said amount, the same as other taxes." (Comp. Stats., ch. 79, subd. 17, sec. 21.)

The question presented is simply this: Does the law empower the board of education to determine the amount necessary to raise by taxation and the levy required therefor, and compel the council, acting ministerially, to make a levy sufficient to provide the amount so determined? Or, on the other hand, is the board simply authorized to report to the council the whole sum required for school purposes, leaving with the council, in the exercise of its discretion, the power to determine what part of that sum must be raised by taxation and what levy will be sufficient for that purpose?

The argument made on behalf of the relator is very able and demands close consideration. It is argued that the manifest intent of the statutes relating to the schools is to vest in the school district, through its board of education, sole legislative power. By the act relating to schools in metropolitan cities, being subdivision 17 of chapter 79, Compiled Statutes, already referred to, the school district is constituted a body corporate. The title to all school property is vested in the district. The board of education is given exclusive control of the property for all the purposes contemplated in the act. All schools are placed under the direction and control of the board of education. The

affairs of the school district are to be conducted exclusively
by the board of education, except as otherwise provided in
the act.  The board is required to provide for the payment
of the indebtedness of the school district, including the
bonded indebtedness.  Different qualifications are provided
for electors of the school district than those required
for general electors of the city.  The board of education
canvasses the vote at school elections.  The board disburses
school funds; and, in general, it is clear that it was the
policy of the law to make the school district independent
of the city government, so far as practicable.  These feat-
ures, however, existed in the act of February 6, 1873, pro-
viding for public schools in cities of the first class.

  *State v. Mayor and Council of the City of Omaha,* 7
Neb., 267, was a case precisely like the one at bar, arising
under the act of 1873, Omaha being then a city of the
first class.  The report of that case contains no adequate
statement of facts, and the language of the opinion lacks
certainty, owing to the want of such a statement, but a
reference to the briefs in the case shows that all the argu-
ments here advanced by the relator were presented in that
case, and all the authorities now called to our attention
were there cited.  The conclusion there reached was that
the power of the board was merely to report an estimate
of the funds required; that the board had no power to
levy a tax, but that it was for the council, in the exercise
of its discretion, to make such levy, and the writ was ac-
cordingly denied.  The statute there under consideration
differed from the one here invoked only in one respect.
The language of that statute was: "The city council is
hereby authorized and required to levy and collect the
necessary amount, the same as other taxes."  Here the lan-
guage is "said amounts."  In the brief on behalf of relator
in the former case it was argued that the terms "amounts
of funds required" and "necessary amounts" were sy-
nonymous, and we think that such argument was sound so

far as applied to those particular expressions. The necessary amount can be neither more nor less than the amount required; so we cannot see that the expression "said amounts," if it should be construed as referring back to the expression "amounts of funds required," can be given any different construction than the term "necessary amounts" used in the other statute. This being the only difference between the statutes applicable in the former case and in that now before us, it would seem that the former case should be treated as a decision controlling us here. Owing, however, to the uncertainty of the published report of the case in 7 Neb., an uncertainty which has led to continued litigation upon this question, we think it proper to pursue the subject further.

In this state, taxation of property within the school district is not the only source of income for the support of the schools. In fact, if the estimate presented by the board of education to the city council in this case approaches accuracy, the school tax forms but a small portion of the school fund. All license fees go to that fund, estimated in this case at $220,000. So all fines arising out of the police court, estimated at $25,000. From the state apportionment of the school funds a further estimate is made of $60,000. The statute does not require the board of education to estimate the amount of funds to be derived from sources other than taxation and to report to the city council simply the amount required to be raised by taxation, but requires an estimate of the whole amount required for the support of the schools and other purposes specified in the act. We think the obvious purpose of the act was to require an estimate to be made and reported to the council of the character designated in the act,—that is, of the total amount of funds required for the different purposes, —and that it was intended that the council should, having received this estimate, for itself determine what amounts would probably be realized from sources other than taxation

and then determine what taxes it would be necessary to levy in order to provide the board of education with the total amount estimated by it as necessary. It is true that in regard to some of the sources of revenue the board of education has facilities equal to those of the council for forming an estimate. This is not, however, in all cases true. All fines and licenses go to the school fund, and the mayor and council have authority, by ordinance, to impose certain licenses, and to a certain extent, in the exercise of their legislative powers, to fix the amount of the fines collectible. Further, it must be borne in mind that the act relating to schools in metropolitan cities is, in all essentials, a copy of the act of 1873 relating to schools in cities generally, and that that act was in effect during a period when councils also had the power of granting saloon licenses. In metropolitan cities this power is now committed to the board of fire and police commissioners, but the mayor and council may still fix within the limits of the statute the amount to be paid for such licenses. For this reason the mayor and city council, and not the board of education, is the body in the best position to estimate the receipts of the school district, and so to determine the amount necessary to raise by taxation, and this fact is important in ascertaining the legislative intent in regard to the statute we are considering.

Our attention is called to several cases which it is claimed sustain the position of the relator. The first of these is *Ex parte The Common Council of Albany*, 3 Cow. [N. Y.], 358. In that case it was held that the council could by *mandamus* compel the supervisors to levy a tax sufficient to raise the sum reported by the council as necessary for the support of the poor. But the statute there committed to the council the power to determine the sum necessary "to be raised by taxation" for that purpose. In *People v. Bennett*, 54 Barb. [N. Y.], 480, a *mandamus* was granted to compel the levy of a school tax for Saratoga Springs,

but it does not appear that the board of education had any other source of income than the tax, and the statute required the trustees of the village to raise and collect by tax such sums as "the board of education should deem needful." In *State v. Smith*, 11 Wis., 65, a similar *mandamus* was allowed, but there the charter of the city expressly required the council to raise by taxation "such sums as may be determined and certified by the board of education to be necessary and proper," in addition to the amount of moneys appropriated or provided by law. In all these cases the statute was explicit and clearly left to the levying body only a ministerial duty to perform. Were our statutes as plain, or were taxation the sole source of income, we might adopt a similar view, but we think that it was intended by our statute merely that the board of education should notify the council of the total amount required, and that to the council is committed a discretionary authority to estimate the receipts from different sources and for itself determine what tax will be necessary to make the total income sufficient to provide the total amount reported by the board. It is true that in *State v. Paddock*, 36 Neb., 263, a *mandamus* was allowed on behalf of the school district of South Omaha against the commissioners of Douglas county upon substantially similar statutes and under a very similar state of facts. An inspection of that case will show, however, that the allowance of the writ was resisted only upon two grounds. One of these related to the time when the estimate was reported to the commissioners. The other question in the case was as to whether it was the duty of the city council or the county commissioners to make the levy. This depended upon the further question as to whether South Omaha was a city of the first class or a city of the second class. The question now before us was not in that case. The refusal of the commissioners to make the levy being put upon entirely other grounds, and the question as to whether or not the

writ was controlling the exercise of a discretionary power not being before the court, that case cannot be considered as a precedent for this.

WRIT DENIED.

POST, J., not sitting.