THE COUNTY BOARD OF EDUCATION OF CHEROKEE COUNTY v. THE BOARD OF COMMISSIONERS OF CHEROKEE COUNTY.

(Filed 17 February, 1909.)

1. Taxation—County Commissioners—Public Schools—Duties—Four-months Period—Constitutional Law.

   The requirement of Article IX, section 3, of the Constitution, that the county commissioners provide by taxation for maintaining the public schools for the minimum period of four months in each year, is not restricted by Articles V and VII, limiting the power of taxation, and the commissioners are subject to indictment upon failure to provide the term of school required by said section 3, Article IX. (Revisal, secs. 3590, 3592.)

2. County Commissioners—Duties, Enforcement of—Mandamus.

   When the county commissioners have so failed in the performance of their duties as to permit and require an interference of the court by civil process, the remedy is by *mandamus.*

3. Mandamus—Public Officer—Discretionary Powers.

   A writ of *mandamus* will not be granted to compel the performance of an act by a public officer involving the exercise of his judgment and discretion, to whom its performance is thus committed by our Constitution and statutes.

4. Same—Taxation—County Commissioners—Public Schools—Four-months Term.

   Our Constitution and statutes have committed to the judgment and discretion of the county commissioners the manner and method of levying taxes to maintain a four-months minimum

BOARD OF EDUCATION v. COMMISSIONERS.

period of the public schools, and in the exercise thereof the courts
will not interfere by civil process, *mandamus* or otherwise, un-
less their action is so unreasonable as to amount to a manifest
abuse of power.

5. **Same—Board of Education—Estimate—Advisory and Recom-
mendatory.**

   The action of the board of education of a county in making and
   submitting to the county commissioners an estimate of the amount
   required to maintain a four-months term of a public school
   (Revisal, sec. 4112) is recommendatory and in aid of the judg-
   ment and discretion given by our Constitution and statutes to
   the county commissioners in such matters.

6. **Same—Action Dismissed.**

   The courts will not grant a *mandamus* to compel the county
   commissioners to accept and adopt as final the estimate of the
   amount required to maintain a four-months· term of a public
   school made by the county board of education (Revisal, sec. 4112),
   and an action brought by the latter board for that purpose will
   be dismissed.

CLARK, C. J., dissenting.

ACTION to obtain a peremptory writ of *mandamus,* heard on
complaint and answer before *Peebles, J.,* at Fall Term, 1908, of
CHEROKEE.

The complaint, in substance, alleged that the funds available
from the regular and ordinary sources of taxation are insuffi-
cient to maintain the public schools of Cherokee County for a
period of four months in the year 1909; that under the provi-
sions of section 4112, Revisal, the plaintiffs, in their official
capacity, had submitted an estimate of the amount required
for the purpose, and demanded that a specific additional tax be
levied by defendants, this estimate and demand being in terms
as follows:

"GENTLEMEN: We beg to submit for your consideration and
action thereon the following: Under and by virtue of section 3,
Article IX of the Constitution of North Carolina, it is your duty
to levy a sufficient tax, in addition to and beyond the limit of
66⅔ cents on $100 worth of property and $2 on each taxable
poll levied for general State and county purposes, in order to
maintain one or more public schools in every school district in
Cherokee County at least four months in every school year.    In

order that you may intelligently make this levy, we submit the following: For the school year beginning 1 July, 1907, and ending 30 June, 1908, it required $12,268.12, estimated, to run the schools for that year; this in addition to the commissions to which the sheriff and treasurer are entitled, and which would make the actual expenses of the schools about $13,150. Of this amount we had on hand $3,450.72. Received from the State, $666.98; fines, $223.45, and the levy for 1907-'08 is $8,780.70.

"We have carefully estimated and considered the condition of the affairs of the schools of the county. It will take the sum of $15,190 to run the schools for the year 1908-'09—that is, beginning 1 July, 1908, and ending 30 June, 1909, based upon the following items of expenditure for teachers, building, commissioners and contingent funds, to wit, $15,190.

"The amount of money that you could raise at 18 cents on the $100 worth of property would be $6,346.49, and on the taxable poll about $2,418, making a total of $8,764.49.

"We estimate that we will receive from the State of North Carolina on the first $100,000 about $660. We also estimate that we will receive in fines and forfeitures about $250, making a total of $9,674.49. Therefore, in order for us to have four months of school in the county, it will require an extra levy, over and above the 18 cents on the $100 worth of property and $1.50 on each taxable poll, of a sum sufficient to raise $4,515.51. We therefore respectfully request that your honorable body do make a sufficient levy, in addition to the 18 cents on the $100 worth of property and $1.50 on the poll, sufficient to raise the further sum of $5,515.51, to be used as a supplemental and special tax, in order to run each public school in Cherokee County for four months for the school year beginning 1 July, 1908, and ending 30 June, 1909. In order to raise this sum of money, we are of opinion that you are required to levy as a supplemental and special tax about 16 cents on the $100 worth of property in the county. If we had not had the $3,450.72 on hand the first of last July it would have been impossible for us to have run the schools four months during the school year 1907-'08. This year there will be no surplus fund on hand,

owing to the fact that considerable building has been done and the patrons of the schools are demanding a higher grade of teachers, which necessarily demands higher pay."

The complaint further averred that defendant board, being unmindful of its duty, had declined and refused and still declines and refuses to accede to plaintiff's demand.

The defendants answer and admit that the estimate has been received in terms as stated, and allege that they are not bound to accept this estimate of plaintiff as final or conclusive, nor to act upon it, if in "their judgment" the amount of tax is too large and not required for the purpose indicated. Defendants, further answering, "expressly deny that the funds available from the regular and ordinary sources of taxation in the county of Cherokee are insufficient to maintain four months of public schools in said county, as required by Article IX, section 3, of the Constitution of the State of North Carolina; but on the contrary the defendants allege that the funds which will be derived from the school tax already levied in said county will be, if properly and economically expended, amply sufficient to keep open the schools in every school district in said county for the period required by law; that it is true, as alleged in paragraph 4 of said complaint, that the Board of County Commissioners of Cherokee County did, in the exercise of their best judgment and discretion, decline and refuse to accede to the demand of the plaintiff to levy the additional tax asked for, but the defendants allege that in so doing the said Board of County Commissioners of Cherokee County were not unmindful of any duty imposed on them, but on the contrary were acting in accordance with their duty and obligation not to levy upon and require the payment by the citizens of Cherokee County of any taxes over and above such as were necessary to defray the expenses of conducting the schools and carrying on the general business affairs of the county; and the defendants allege that they have made a careful investigation, and after such investigation they verily believe and aver the fact to be that the demand of the plaintiff is unreasonable and the additional tax levy asked for unnecessary and exorbitant, and that the tax levy already made, 60 cents on the property and $1.80 on polls, within the county of

Cherokee, will produce ample revenue with which to defray all the expenses of the county, and the proportion of said taxes applicable to school purposes, to wit, 18 cents on property and $1.50 on polls, will be, if properly, economically, judiciously and lawfully expended, more than sufficient to keep open for four months, as required by law, in every school district in said county, a well-equipped school; that under such circumstances it was not only lawful, but it was the duty of said board of county commissioners, in the proper exercise of their judgment and discretion, to decline to make any additional tax levy, and especially so large a levy as that demanded by the plaintiff, and, as defendants are advised and believe, this honorable court will not interfere with the said board of county commissioners in the exercise of their judgment and discretion."

The court, upon the facts appearing in the complaint and answer, entered judgment as follows:

"This cause coming on to be heard upon the motion of the plaintiff for a peremptory writ of mandamus, and the court being of opinion that, upon the complaint and answer, the plaintiff is not entitled to said writ, the court finds as facts that the defendants have exercised their discretion in the premises and declined to levy this tax, as asked for by plaintiff. It is now, therefore, ordered, adjudged and decreed that said motion be and the same is hereby dismissed, and that the action be and the same is hereby dismissed, with costs.

(Signed)    "R. B. PEEBLES,
            *Judge Presiding.*"

Whereupon plaintiff excepted and appealed.

*E. B. Norvell, Dillard & Bell* and *Bickett & White* for plaintiff.
*Ben Posey* and *Merrick & Barnard* for defendants.

HOKE, J., after stating the case: The Constitution of this State (Art. IX, sec. 3) provides "that each county of the State shall be divided into a convenient number of districts, in which one or more public schools shall be maintained at least four

months in every year, and if the commissioners of any county shall fail to comply with the aforesaid requirement of this section they shall be liable to indictment."

Construing this section, in *Collie v. Commissioners,* 145 N. C., 170, the Court held that the duty of the county commissioners to provide by taxation for maintaining the public school for the minimum period of four months was not affected by the restrictions on the power of taxation contained in Articles V and VII of the Constitution; and from this it follows that the requirements of section 3, Article IX, to the extent indicated, are peremptory, and a failure on the part of the commissioners to perform the duty thereby imposed is or must be made an indictable offense. The provisions of our statute law are ample to make this feature of the Constitution effective by indictment (Revisal, secs. 3590-3592), and there are, no doubt, other sections of the criminal code bearing on the subject, and the question presented on this appeal is whether the duty referred to can be enforced by writ of *mandamus,* the writ applied for by plaintiff in this proceeding. As relevant to this question, and on facts appearing in the record, it is recognized doctrine that the writ of *mandamus* is the appropriate remedy to enforce the performance of duty on the part of county officials, when the duty in question is both peremptory and explicit, but that such a writ will not be granted to compel the performance of an act "involving the exercise of judgment and discretion on the part of the officer to whom its performance is committed." In some of the books the principle is stated in this way, "that the writ is only allowable when the duty is mandatory and the act sought to be coerced is ministerial in its nature"; and while expressions are sometimes found that the performance of a duty to some extent discretionary will be controlled by this writ when it clearly appears that an officer has acted capriciously, an examination of these authorities will, we think, disclose that in cases involving the exercise of official discretion the order of the court in actions for *mandamus* has always been restricted to compelling an officer to act in a given case, and will never undertake to direct him as to how he shall act.

In Abbott on Municipal Corporations, sec. 1108, the principle is thus stated: "To authorize the writ, the duty must be mandatory and the act sought to be coerced ministerial in its nature. If the officer or governmental agency sought to be coerced is vested by law with discretionary powers as to the doing or not doing of the act sought to be coerced, or *in the manner of doing it*, the writ will not issue." And in High on Extr. Legal Remedies (2d Ed.), sec. 24, it is said: "But the most important principle to be observed in the exercise of the jurisdiction by *mandamus*, and one which lies at the very foundation of the entire system of rules and principles regulating the use of this extraordinary remedy, is that which fixes the distinction between duties of a peremptory or mandatory nature and those which are discretionary in their character, involving the exercise of some degree of judgment on the part of the officer or body against whom the *mandamus* is sought. * * * And whenever such officers or bodies are vested with discretionary powers as to the performance of any duty required at their hands, or when in reaching a given result of official action they are necessarily obliged to use some degree of judgment and discretion, while *mandamus* will lie to set them in motion and to compel action upon the matters in controversy, it will in no manner interfere with the exercise of such discretion or control or dictate the judgment or decision which shall be reached." And again, in section 34: "An important distinction to be observed in the outset, and which will more fully appear hereafter, is that between duties which are peremptory and absolute, and hence merely ministerial in their nature, and those which involve the exercise of some degree of official discretion and judgment upon the part of the officers charged with their performance. As regards the latter class of duties, concerning which the officer is vested with discretionary powers, while the writ may properly command him to act or may set him in motion, it will not further control or interfere with his action, nor will it direct him to act in any specific manner."

The doctrine so stated is in accord with the uniform decisions of this Court on the subject. *Ward v. Commissioners,* 146 N. C., 534; *Glenn v. Commissioners,* 139 N. C., 412; *Barnes v.*

*Commissioners,* 135 N. C., 27; *Ewbank v. Turner,* 134 N. C., 77; *Loughran v. Hickory,* 129 N. C., 281; *Tate v. Commissioners,* 122 N. C., 812; *Burton v. Furman,* 115 N. C., 166; *Brodnax v. Groom,* 64 N. C., 244.

In the well-considered opinion of *Associate Justice MacRae,* in *Burton v. Furman, supra,* it is said: "Neither will this writ *(mandamus)* be granted to compel the performance of an act involving an exercise of judgment and discretion on the part of the officer to whom its performance is committed. The law is so thoroughly settled in this State by the former adjudications of the Court that we have nothing to do but refer to them." And the learned Justice then quotes with approval from the opinion of *Justice Bynum,* in *Brown v. Turner,* 70 N. C., 93, to this effect: "*Mandamus* will lie when the act required to be done is imposed by law, is merely ministerial, the relator has a clear right and is without any other adequate remedy. Moses on Mandamus, 68. But it does not lie where judgment and discretion are to be exercised, nor to control the officer in the manner of conducting the general duties of his office."

An application of these authorities to the facts appearing in the record requires that the order of the judge denying plaintiff's prayer for a *mandamus* should be affirmed. The question presented, the amount of taxes to be levied to maintain the public schools of Cherokee County for the minimum period of four months, is one which clearly involves the exercise of judgment and discretion, which our Constitution and statute law have thus far referred to the board of commissioners of the several counties, and the courts cannot and should not undertake to control their decision. In this view, the recent case before the Court, *Ward v. Commissioners,* seems to be directly in point. That was a case in which certain citizens and taxpayers of Beaufort County applied for a *mandamus* to compel the county commissioners to build a sufficient courthouse for the county, and on the hearing it was found as a fact that "The commissioners have not kept and maintained in good and sufficient repair the courthouse of the county, and do not offer or propose to do so." Relief by *mandamus* was denied, and *Chief Justice Clark,* delivering the opinion of the Court, said: "A *mandamus*

will not lie to compel the county commissioners to repair or build a courthouse. The duty of providing a sufficient and proper courthouse is to be discharged by the county commissioners, subject to indictment if there is a willful failure, and to supervision of the people of the county in the election of another board of commissioners, should the voters see fit. It is not a duty resting for enforcement with the Judge of the Superior Court nor subject to supervision by the court. The plaintiff has no specific legal right for the enforcement of which he can invoke an order of the judicial branch of the Government to supervise and control the administrative branch. The building a new courthouse or repairing an old one is not a mere ministerial matter, admitting of no debate, but is one of discretion, committed to the county commissioners, in regard to which their judgment and discretion must prevail, and not the opinion of a judge. Only when a grand jury and jury have found a criminal abuse of duty can the court intervene, and then only to punish the individuals—not to compel them, as officials, to do any specific act not required by statute to be done in a specific way or to a prescribed extent. In *Brodnax v. Groom,* 64 N. C., 244, *Pearson, C. J.,* discussed this subject, and said: 'The case before us is within the *power* of the county commissioners. How can this Court undertake to control its *exercise?* Can we say such a bridge does not need repairs, or that in building a new bridge near the site of an old bridge it should be erected, as heretofore, upon posts, so as to be cheap, but warranted to last some years, or that it is better policy to locate it a mile or so above, where the banks are good abutments, and to have *stone pillars,* at a heavier outlay at the start, but such as will insure permanence and be cheaper in the long run? In short,' the Court continued, 'this Court is not capable of controlling the *exercise* of power on the part of the General Assembly or of the county authorities, and it cannot assume to do so without putting itself in antagonism as well to the General Assembly as to the county authorities and *erecting a despotism of five men,* which is opposed to the fundamental principles of our Government and the usage of all times past. For the exercise of powers conferred by the Constitution the people must

rely upon the honesty of the members of the General Assembly and of the persons elected to fill places of trust in the several counties. This Court has no power, and is not capable if it had the power, of controlling the exercise of power conferred by the Constitution upon the legislative department of the Government or upon the county authorities.' "

It is argued for plaintiff that this decision does not apply, because the question there involved was clearly one of discretion, "whether the courthouse provided was sufficient," while here the duty to maintain a public school for four months is peremptory and permits no discretion. But the argument does not correctly state the question presented. It is not, shall the school be maintained for four months? but how much money is required to be raised by taxation for the purpose indicated; and this, as stated, is a matter which does involve both judgment and discretion, and which cannot be controlled by the courts in an action of this character, but has been wisely referred by the law to the board of county commissioners. Having general charge and supervision of the county affairs, they best know the circumstances and needs of its people and all the conditions that enter into the problem—the valuation of the property in the county, the amount likely to be realized from a given levy, and the amount available or to be expected from other sources. Moreover, acting as they do under a continuing sense of responsibility to the people who elected them, and liable to indictment in case of willful or negligent failure to perform their duties, they are the body best fitted for the management of these local affairs and most likely to give satisfactory results. Even when the power exists, the courts are most reluctant to interfere, and will never do so by civil process, unless the local officers fail or refuse to act at all, or unless their action is so unreasonable as to amount to a manifest and oppressive abuse of discretion. *Rosenthal v. Goldsboro,* 149 N. C., 128; *Railroad v. Commissioners,* 148 N. C., 220.

It is further argued that, as the county board of education, acting under the provisions of the statute (Revisal, sec. 4112), have submitted an estimate of the amount required to maintain the public schools during the year 1909 for the minimum period

of four months, this is ascertained as a definite fact, and there-
upon the duty of the county commissioners to levy a tax suf-
ficient to raise the amount has become both peremptory and
specific, bringing the case under the principle declared and up-
held in *Tate v. Commissioners, supra.* But the objection to this
position is that under the law in question the estimate made by
the board of education is not final and conclusive, but the amount
is referred to the board of county commissioners for ultimate
decision and, as we have endeavored to show, in the exercise of
their discretion, and is not, therefore, a fixed sum or definite
tax rate, as in *Tate v. Commissioners.* This, we think, is clearly
the proper interpretation of the statute under which this esti-
mate was submitted. Both our constitutional provisions and
general legislation on the subject establish and approve the prin-
ciple and policy of local regulation for these matters of local
concern, not to be departed from, except in cases of great and
overruling necessity; and a statute should never be construed as
infringing upon this principle of local self-government unless
explicit in terms and clearly sanctioned by the Constitution.
Not only is this not true of the statute in question here, but the
section itself throughout gives clear indication that, notwith-
standing the estimate made by the board of education, the ques-
tion of amount is for the county commissioners to determine:
"If the tax levied by the State be insufficient to maintain one
or more public schools in each district for four months, then
the board of commissioners shall levy annually a special tax to
supply the deficiency," etc. * * * "The taxes shall be levied
on the property, credits and polls of the county, and in the
assessment of the amount on each the commissioners shall ob-
serve the constitutional equation." And in the conclusion of
the section it is directed: "The county board of education, on
or before the annual meeting of the commissioners for levying
county taxes, shall make an estimate of the amount of money
necessary to maintain the schools for four months and submit
it to the board of county commissioners."

One of the more usual definitions of the term "submit" is to
"commit to the discretion or judgment of another," and the
term "estimate" tends to show that the action of the board of

education was intended, at most, to have only persuasive force, and, taken together, "to make an estimate of the amount and submit it to the board of county commissioners," clearly shows that it was submitted for their consideration only, and that the determination of the question was with them. *School District v. Omaha,* 58 N. W., 442.

We are of opinion that the judge below has put the correct interpretation upon the statute, and that his judgment dismissing the action should be

Affirmed.

CLARK, C. J., dissenting: A *mandamus* lies only when there is a legal duty without discretion. The county commissioners are chosen to administer county affairs. Therefore, whether they shall erect or repair bridges, courthouses, and the like, is a matter vested in their discretion, which the courts cannot regulate, and must be corrected, if their conduct is not satisfactory, by the people electing a different board, except only where the neglect of duty or misconduct is such as calls for indictment and punishment.

But public education is a State, not a county, matter. The Constitution requires four months schooling, and the county commissioners are allowed no discretion. Indictment of the commissioners will give the child, whose life is passing, no compensation for its irreparable loss. Neither would the election of new commissioners a year or two later. Besides, there may be counties in which the popular majority would be unfavorable to a levy of taxation adequate for four months' schooling. A bridge or a defective courthouse can wait. The child's education cannot. With him,

"*Dies fluunt et vita irreparabilis.*"

"The days flow by, and the years that can never be recalled."

When the county commissioners refuse to levy the tax requisite to give the four months' schooling guaranteed by the Constitution, the injury and wrong done is irreparable, unless the State can step in through its courts and promptly enforce its constitutional guarantee.

The statute does not contemplate that the estimate of the county board of education is conclusive as to the amount that the county commissioners shall levy, any more than that the estimate of the county commissioners is final. To hold the former might unduly burden the county. To accept the latter would destroy the constitutional guarantee of four months' schooling. But when it is alleged by the county board of education that the sum fixed by the county commissioners is inadequate, the State, through its courts, should hear the matter at chambers, as in all cases of *mandamus* for other than a money demand, and, upon examination of the records and other proofs offered, determine the question. It is a matter of arithmetic and evidence, and far less complicated than many questions the courts are called upon to decide. Only thus can the State maintain and enforce its educational system according to the Constitution.

NOTE—Immediately after filing this opinion, the Legislature (of 1909), then in session, passed an act giving the county boards of education the right to sue out a *mandamus* in such cases: