WILSON COUNTY BOARD OF EDUCATION v. WILSON COUNTY BOARD OF COMMISSIONERS

No. 757SC45

(Filed 4 June 1975)

1. Schools § 5— budget requests — line by line review by county commissioners .

   A board of county commissioners has the right to consider budget requests submitted by a board of education on a line by line basis regardless of whether an additional tax levy is necessary to furnish the funds requested.

2. Schools § 5— budget request dispute — appeal to superior court — insufficiency of findings

   Where a dispute between the county board of education and the county commissioners as to the amount of a locally funded salary supplement for the superintendent of schools was appealed to the superior court pursuant to G.S. 115-87, the superior court erred in merely finding that the amount requested by the board of education was not unreasonable and concluding that the board of education was in the best. position to determine the reasonableness of a salary supplement which did not require an additional tax levy since the court was required to find facts as to the amount of the current expense fund and whether the disputed amount is a necessary item in the maintenance of the schools.

APPEAL by respondent from *Fountain, Judge.* Judgment entered 17 October 1974 in Superior Court, WILSON County. Heard in the Court of Appeals 20 March 1975.

On 9 April 1973, the Wilson County Board of Education, acting in accordance with the directives of G.S. 115-39, elected a Superintendent of Schools for a four-year term beginning 1 July 1973. The Board of Education duly filed a certificate of election with the State Superintendent of Public Instruction, entered into a contract with the newly elected Superintendent, and

filed a copy of the contract with the State Superintendent of Public Instruction, all as required by G.S. 115-39. Among other things, the contract provided that "[i]n addition to the salary paid the Superintendent from State funds, the Superintendent shall receive annually from local funds as a supplement thereto the amount of $6500.00 plus cost of living increases annually." The Board of Education presented its "1973-74 Budget Request," dated 30 April 1973, to the Wilson County Board of Commissioners. The Budget Request contained, in the current expense fund, an item of $6500 for the Superintendent's salary. The Board of Commissioners reduced the amount to $5000, and this action was not challenged by the Board of Education.

In 1974 the General Assembly granted a 7½% pay raise to all teachers employed by the school systems in the State. In May 1974, the Board of Education, as required by G.S. 115-80, submitted its "Budget Request" to the County Commissioners. Included in the current expense fund was an item of $7500 as supplement for the Superintendent. By letter, the Board of Education was reminded that the Commissioners had specifically requested that increases in the current expense fund budget requests be limited to 5% and the Board of Education was requested to resubmit their current expense fund budget request. In compliance with the cost of living increase provision in its contract with the Superintendent, the Board of Education applied the 7½% formula to the $6500 salary supplement, and in the revised current expense fund budget submitted to the County Commissioners the amount of local supplement requested for the Superintendent's salary was $6,984.

At its 1 July 1974 meeting, the Board of Commissioners adopted its budget for the 1974-75 fiscal year. The budget included a locally funded supplement of $5250 to the salary of the Superintendent, but the Board approved the total amount of the current expense fund of $806,542. The $806,542 had included the $6984 figure, and the Board of Commissioners requested the Board of Education "to indicate to which line item(s) the remaining $1,734 should be applied".

The Board of Education, acting under the provisions of G.S. 115-87, requested a joint meeting of the two boards for the purpose of considering the disputed item "carefully and judicially". The joint meeting was held on 19 August 1974 and resulted in a tie vote, the majority Board of Commissioners voting to leave the item in dispute at $5250 and the members of

the Board of Education present voting unanimously to allow the item of $6984 as requested by the revised budget. As the result of the tie vote, the matter was submitted to the Clerk of the Superior Court acting as arbitrator. The Clerk held a hearing at which both parties were represented by counsel who tendered written briefs and made oral arguments. On 23 August 1974 the Clerk entered his "arbitration decision" in which he concluded that the Board of County Commissioners had the authority to reduce the amount of a salary supplement which the County Board of Education contracts to pay to its Superintendent of Schools and further that the Board of County Commissioners has the authority to modify a budget submitted by the County Board of Education so long as the total current expense budget does not exceed the unit's per capita allotment of funds.

From this decision, the Board of Education appealed and filed its petition in the Superior Court requesting that the court declare (1) that it has the legal right and responsibility to enter into a contract with a Superintendent providing for the payment of a supplement from local funds without the approval or disapproval of the County Commissioners, particularly where the payment of the supplement is to come from current expense funds apportioned on a per capita student basis, and (2) in the alternative, that the amount of the supplement agreed to be paid by it to the Superintendent is not unreasonable, requires no additional tax levy, and that the denial of the budgeted request is arbitrary and without basis and the amount requested be restored in full.

The Board of Commissioners answered admitting the right of the Board of Education to contract with a Superintendent but denying the right of the Board of Education to bind the tax-levying authority to pay any supplement from local funds without first obtaining the approval of the County Commissioners.

The court heard the matter upon the pleadings and the written briefs and oral arguments of counsel. The court found facts, among which are the following (numbered in accordance with the court's judgment) :

"11. . . .

The Respondent having approved on overall budget for the Current Expense Fund for the Petitioner for the fiscal year beginning on 1 July, 1974 in the sum of $806,542.00, there

is no dispute between the Petitioner and the Respondent, which if decided in favor of the Petitioner, would require the Respondent to levy additional taxes in order to raise the funds necessary to pay the supplement of the Superintendent of the Petitioner in full as requested by the Petitioner. That the dispute between the Petitioner and Respondent concerns not the overall budget for the Current Expense Fund in the sum of $806,542.00 but how $1,734.00 of said budget should be applied and the failure of the Respondent to permit the Petitioner to pay its Superintendent pursuant to its contract.

12. That the amount of the Superintendent's supplement requested by the Petitioner and contracted to be paid by the Petitioner with its Superintendent is not unreasonable and no facts have been presented by the Respondent or otherwise appear which would justify a finding that the supplement to be paid pursuant to the contract is unreasonable and which would justify placing the Petitioner in a position of not being able to comply with its contract with its Superintendent.

13. The Court further finds as a fact that the only dispute existing between the Petitioner and the Respondent concerns the Current Expense Fund and not the amount thereof and that there is no dispute concerning the amount of the capital outlay fund and the debt service fund.

14. The Court further finds as a fact that once the amount of the Current Expense Fund is determined and apportioned to the Petitioner along with the other administrative units in Wilson County that the Board of Education is in the best position to determine how the Current Expense Funds and budget so apportioned should be best spent so long as it is done in a reasonable manner (G.S. 115-27 providing that the Board of Education of each county in the state, subject to any paramount powers vested by law in the State Board of Education or any other authorized agency shall have general control and supervision of all matters pertaining to the public schools and their respective administrative units.)"

Upon the facts found the court entered the following conclusions of law:

"1. That for the fiscal year beginning on 1 July, 1974, the Superintendent's salary supplement as requested by the Petitioner in the sum of $6,984.00 is not unreasonable and the payment of the same does not require the Respondent to levy additional taxes.

2. And that the contract between the Petitioner and the Superintendent dated 9 April, 1973 complies with the provisions of G.S. 115-39 and is not unreasonable on its face.

3. That the Petitioner, the Wilson County Board of Education, is a body corporate and has the general control and supervision of all matters pertaining to the public schools in its administrative unit (G.S. 115-27) and is in the best position to determine the reasonableness of a salary supplement to be paid to its Superintendent which does not require the levying of additional taxes but which shall be paid from apportioned Current Expense Funds.

4. That the intent of Chapter 115 and specifically the provisions of G.S. 115-87 is to avoid dominance by either the County Board of Commissioners or the School Board over the other and that the failure on the part of the Respondent to approve an additional $1,734.00 from an apportioned approved Current Expense Fund to be applied to a Superintendent's Salary supplement pursuant to a contract between the Petitioner and its Superintendent (who is not an employee of the Wilson County Board of Commissioners) where no additional tax levy is required, places the Wilson County Board of Education in a subservient position to the Wilson County Board of Commissioners.",

and ordered that the Board of Commissiners not prohibit the payment of supplement in the amount of $6984 and that the budget be changed to reflect the restoration of that amount in full to the line item 611.1 in the current expense fund.

The Board of County Commissioners appealed.

*Connor, Lee, Connor, Reece & Bunn, by David M. Connor, for petitioner appellee.*

*Carr, Gibbons and Cozart, by F. L. Carr, for respondent appellant.*

Board of Education v. Board of Commissioners

CLARK, Judge.

At the outset we think it pertinent to point out that we find no clear present statutory authority or court decisions supporting the position of either of the parties. We find it necessary, in order to reach a conclusion with respect to the merits of the case, to consider the legislative history of the pertinent statutes and the decisions of the court interpreting those statutes.

Article IX, § 2, of the Constitution of North Carolina requires that "[t]he General Assembly shall provide by taxation and otherwise for a general and uniform system of free public schools which shall be maintained at least nine months in every year" and provides further that "[t]he General Assembly may assign to units of local government such responsibility for the financial support of the free public schools as it may deem appropriate".

In compliance with the mandate of the Constitution, the General Assembly enacted Chapter 115, General Statutes of North Carolina. Section 1 of Article I thereof provides for a "General and uniform system of schools" throughout the State and for the operation in every county and city administrative unit of "uniform school term of nine months, without the levy of a State ad valorem tax therefor". Section 9 of Article I defines the "tax-levying authorities" as the board of county commissioners with special provisions for transfer of that authority to the county commissioners by the governing board of a city or town when the boundaries of its city administrative unit are coterminous with or situated wholly within that incorporated city or town.

Article 5 of Chapter 115 establishes county and city boards of education, and they were given general control and supervision over all matters pertaining to the public schools in their respective units, except such matters, the control and supervision of which was assigned by the General Assembly to the State Board of Education or other authorized agency. See *Kirby v. Board of Education*, 230 N.C. 619, 55 S.E. 2d 322 (1949).

Article IX, § 7, of the Constitution of North Carolina, appropriates all penalties, forfeitures, and fines for violation of the criminal laws collected in the several counties for the establishment and maintenance of the public schools.

It is abundantly clear that from the beginning of the public school system in this State, the duty of providing necessary funds for the operation of schools has rested on the county commissioners.

The General Assembly of 1901 provided for a State fund for the public schools which is to be distributed among the counties. The General Assembly further provided that if the tax levied for the support of public schools generated insufficient funds to maintain one or more schools in each district for four months, "then the board of commissioners of each county shall levy annually a special tax to supply the deficiency . . . " , "and the funds thus raised shall be expended in the county in which collected, in such manner as the county board of education may determine for maintaining the public schools for four months at least in each year." Ch. 4, "An Act to Revise and Consolidate the Public School Law", § 6, Pell's Revisal of 1908, Vol. 2, Ch. 89, § 4112. That Act also required the county board of education to "submit" to the county commissioners "an estimate of the amount of money necessary to maintain the schools for four months". In *Collie v. Commissioners*, 145 N.C. 170, 59 S.E. 44 (1907), the Court declared the statute to be constitutional and valid, even though the tax levied exceeded the limitation prescribed in Article V of the Constitution of North Carolina, holding that the county commissioners were required to levy the taxes requested by the board of education and found by the county commissioners to be necessary for the operation of the schools for the term required by law. In the *Collie* case, there was no disagreement with respect to the amount necessary to operate the school for the constitutional term. However, in *Board of Education v. Commissioners*, 150 N.C. 116, 63 S.E. 724 (1909), this was not the case. The Board of Education of Cherokee County submitted to the county commissioners their estimate of the amount necessary to operate the schools for four months. The Board of Education estimated that it would take the sum of $15,190 to run the schools for the fiscal year, "based upon the following items of expenditure for teachers, building, commissioners and contingent funds . . . " Included in the request was this statement:

> "We estimate that we will receive from the State of North Carolina on the first $100,000 about $660. We also estimate that we will receive in fines and forfeitures about $250, making a total of $9,674.49. Therefore, in order for us to

have four months of school in the county it will require an extra levy, over and above the 18 cents on the $100 worth of property and $1.50 on each taxable poll, of a sum sufficient to raise $4,515.51. We therefore respectfully request that your honorable body do make a sufficient levy, in addition to the 18 cents on the $100 worth of property and $1.50 on the poll, sufficient to raise the further sum of $5,515.51, to be used as a supplemental and special tax, in order to run each public school in Cherokee County for four months for the school year beginning 1 July, 1908, and ending 30 June, 1909. In order to raise this sum of money, we are of the opinion that you are required to levy as a supplemental and special tax about 16 cents on the $100 worth of property in the county. If we had not had the $3,450.72 on hand the first of last July it would have been impossible for us to have run the schools four months during the school year 1907-'08. This year there would be no surplus fund on hand, owing to the fact that considerable building has been done and the patrons of the schools are demanding a higher grade of teachers, which necessarily demands higher pay."

The county commissioners considered the request, approved it in part, but refused to provide all the funds requested. The Board of Education sought, by petition for writ of mandamus, to compel the commissioners to levy a tax sufficient to comply with the request in full. The county commissioners took the position that they had the duty of determining what funds were necessary. The Superior Court refused to issue the writ, and the Supreme Court affirmed. In affirming, the Court, through Hoke, J., (later C.J.), said:

"One of the more usual definitions of the term 'submit' is to 'commit to the discretion or judgment of another', and the term 'estimate' tends to show that the action of the board of education was intended, at most, to have only persuasive force, and, taken together, 'to make an estimate of the amount and submit it to the board of county commissioners', clearly shows that it was submitted for their consideration only, and that the determination of the question was with them. *School District v. Omaha,* 39 Neb. 745." *Board of Education v. Board of Commissioners, supra,* at 127.

Chief Justice Clark, in a vigorous dissent, noted that when the commissioners refuse to levy the tax necessary to give the four months' schooling required by Constitution, the injury and wrong done is irreparable unless the State can, through its courts, enforce the constitutional guarantee. He said: .

> "The statute does not contemplate that the estimate of the county board of education is conclusive as to the amount that the county commissioners shall levy, any more than that the estimate of the county commissioners is final. To hold the former might unduly burden the county. To accept the latter would destroy the constitutional guarantee of four months' schooling."

The 1909 General Assembly repealed § 4112 of the Revisal of 1905 of North Carolina, and enacted in its place the following (quoted in pertinent part) :

> "On or before the first Monday in June of each and every year the county board of education of each county shall ascertain the amount of money that will be needed to maintain the public schools of such county for four months during the succeeding school year. The board of education, using as a basis the receipts for school purpose during the current school year ending June thirtieth, shall ascertain the amount that will be available for school purposes from the regular school tax, from fines and penalties and from the amount appropriated under section four thousand and ninety-seven of the Revisal of one thousand nine hundred and five of North Carolina (the annual per capita appropriation to the county from the special state appropriation for public schools). If the amount to be received is less than the amount ascertained to be needed, the board of education shall submit a statement of the above facts to the board of county commissioners of such county; and it shall be the duty of the board of county commissioners to levy a special tax on all property and polls in said county to supply one-half the deficiency for the support and maintenance of the public schools of such county for four months. . . . This tax shall be levied and collected as other county taxes are levied and collected, and the funds thus raised shall be expended in such manner as the county board of education may determine for maintaining one or more public schools in each school district for four months in each year. The calculation of the amount that will be necessary shall state

Board of Education v. Board of Commissioners

separately the amounts needed for supervision, for adminis-
tration, for buildings and repairs, for expenses (this to be
itemized) and for salaries of teachers. . . . The county
board of education shall further state the number of teach-
ers . . . and the salary of each teacher . . . . In the event of
a disagreement between the county board of education and
the board of county commissioners *as to the rate of tax to
be levied,* the county board of education may bring an ac-
tion in the nature of mandamus against the board of
county commissioners to compel the levy of such special
tax . . . , and it shall be the duty of the judge hearing the
same *to find the facts as to the amount needed and the
amount available from the sources herein specified, which
finding shall be conclusive, and to give judgment* requiring
the county commissioners to levy the sum which he shall
find necessary to maintain the schools for four months in
said county." (Emphasis supplied.) Ch. 508, Public Laws
of North Carolina 1909.

The statute was again repealed and a substitute therefor
enacted by the General Assembly of 1913. The only pertinent
change was that the board of education, in the event the amounts
received and to be received from the listed sources available to
the board of education should be less than that required, is to
submit to the county commissioners "an *itemized* statement of
the amounts needed for supervision, for administration, for
buildings and repairs, for salaries of teachers, and for all other
expenses allowed by law." (Emphasis supplied.) In the pro-
vision with respect to disagreement the board of education is
allowed to bring action in the nature of mandamus not only in
the event of disagreement with respect to the rate of tax to be
levied, but also in the event of disagreement "as to the amount
of the deficiency to be supplied for a four months school". See
Gregory's Supplement to Pell's Revisal, Vol. III, § 4106 (a) (8)
1913.

The 1919 General Assembly rewrote the education statutes
and the provision for submission of a budget and the provision
for procedure in event of disagreement were separated, although
the provisions remained essentially the same. See Consolidated
Statutes of North Carolina, Annot. (1919), Vol. II, §§ 5486, 5487.
See also § 5488, which provides:

"In the event of a disagreement between the county board
of education and the board of county commissioners as to

the amount to be provided by the county for the maintenance of a six months school term, and as to the rate of tax to be levied therefor, or in the event of the refusal of any board of county commissioners to levy said tax, the county board of education shall bring action in the nature of a mandamus against the board of county commissioners to compel the levying of such special tax under the provisions of this article entitled Mandamus of the chapter on Civil Procedure. And it shall be the duty of the judge hearing the same to find the facts as to the amount needed and the amount available from the sources herein specified, which findings shall be conclusive, and to give judgment requiring the county commissioners to levy the sum which he finds necessary to maintain the schools for six months in every school district in the county. Any board of county commissioners failing to obey such order and to levy the tax shall be guilty of a misdemeanor and shall be prosecuted therefor in the superior court."

The 1923 General Assembly rewrote the statute with respect to disagreements so that it read as follows:

"In the event of a disagreement between the county board of education and the board of county commissioners *as to the amount of salary fund* or the fund necessary to pay interest and installments on bonds, notes, and loans, the county board of education and the board of county commissioners shall sit in joint session, and each board shall have one vote on the *question of the adoption of these amounts* in the budget. A majority of the members of each board shall cast the vote for each board. In the event of a tie, the clerk of the superior court shall act as arbitrator upon the issues arising between said two boards, and shall render his decision thereon within ten days. But either the county board of education or the board of county commissioners shall have the right to appeal to the superior court within thirty days from the date of the decision of the clerk of the superior court, and it shall be the duty of the judge hearing the case on appeal *to find the facts as to the amount of the salary fund* and the fund necessary to pay interest and installments on bonds, notes, and loans, which findings shall be conclusive, and he shall give judgment requiring the county commissioners to levy the tax which will provide *the amount of the salary fund* which he

Board of Education v. Board of Commissioners

finds necessary to maintain the schools for six months in every school district in the county and the amount necessary to pay interest and installments on bonds, notes, and loans. Any board of county commissioners failing to obey such order and to levy the tax ordered by the court shall be guilty of a misdemeanor and shall be fined or imprisoned in the discretion of the court.

In case of an appeal to the superior court, all papers and records relating to the case shall be considered a part of the record for consideration by the court.",

and with respect to jury trial,

"The county commissioners shall have the right to have the issues tried by a jury, as to the amount of the teachers' salary fund and the operating and equipment fund, which jury trial shall be set at the first succeeding term of the superior court, and shall have precedence over all other business of the court: Provided, that if the judge holding the court shall certify to the governor, either before or during such term, that on account of the accumulation of other business, the public interests will be best served by not trying such action at said term, the governor shall immediately call a special term of the superior court for said county, to convene as early as possible, and assign a judge of the superior court or an emergency judge to hold the same, and the said action shall be tried at such term. There shall be submitted to the jury for its determination the *issue as to what amount is needed to maintain the schools for six months,* and they shall take into consideration the amount needed and the amount available from all sources as provided by law. The final judgment rendered in such action shall be conclusive, and the county commissioners shall forthwith levy taxes in accordance with such judgment; otherwise those who refuse so to do shall be in contempt, and may be punishable accordingly: Provided, that in case of a mistrial or an appeal to the supreme court which would result in a delay beyond a reasonable limit for levying the taxes for the year, the judge shall order the commissioners to levy for the ensuing year a rate sufficient to pay interest and installment on notes, loans and bonds, and to produce, together with what may be received from the state public school fund and from other sources, an amount for the teachers' salary fund equal to the amount of this fund for

the previous year." (Emphasis supplied.) Consolidated Statutes of North Carolina, 1924, Vol. III, §§ 5608 and 5609.

The statute was construed by the Court in *In Re Board of Education,* 187 N.C. 710, 122 S.E. 760 (1924). The commissioners and the board of education were in disagreement over the May budget for the school year 1923. All matters in controversy had been settled by agreement except one item in the salary fund; to wit, the salary to be paid the Superintendent of Public Instruction of Yadkin County. The board of education had fixed his salary at $3,000. The commissioners presented a counter budget fixing it at $2,000. The matter was referred to the clerk, over the objection of the board of education. The clerk fixed the salary at $2600 and $400 for expenses. Both boards appealed to the Superior Court. The county commissioners took the position that the issue should be decided by a jury. To this position the board of education objected. The court, upon agreed facts, refused a jury trial and affirmed the clerk. Both boards again appealed. Chief Justice Clark wrote the opinion for a unanimous Court. He noted that the statute required that the May budget prepared by the board of education should contain three separate school funds: (a) a salary fund, (b) an operating and equipment fund, and (c) a fund for the repayment of all notes, loans and bonds and that "[t]he salary fund shall include the salaries of all superintendents, principals, supervisors, teachers of all sorts, the per diem of the county board of education, and the salaries of all other officials authorized by law". The Court quoted the statutory provisions with respect to disagreement and noted that in *Board of Education v. Comrs.,* 182 N.C. 571, 109 S.E. 630 (1921), the commissioners had taken the position that the statute was not constitutionally valid because it made the finding of the judge conclusive and thereby denied the right of trial by jury but that the court there held the statute to be constitutionally valid. The statute required that the salary fund include the salary of the superintendent and further provided for the procedure in event of disagreement "as to the amount of the teachers salary fund". The machinery in the event of disagreement provided for a jury trial if demanded by the commissioners. Therefore, the Court held, the court erred in refusing to submit the matter to the jury. The opinion does not disclose whether an additional tax levy would be required. It is abundantly clear, however, that only one item of the salary fund was before the clerk and the superior court and considered on appeal by the Supreme Court.

The 1925 General Assembly made only minor changes in the statute, primarily designating the salary fund as the same fund as the operating or equipment fund. N. C. Cumulative Statutes 1925, § 5608. The 1927 General Assembly by amendment replaced "teachers' salary fund and the operating equipment fund" with the words "current expense fund" and the words "interest and installment on notes, loans and bonds" were replaced with the words "the debt service fund".

The school laws were again rewritten by the 1955 General Assembly, and it is those statutes, which we must now interpret. The 1955 Act was made effective 26 May 1955, and made no substantial change in the budgetary methods or in the procedure to be employed in the event of disagreement. However, there are some changes which, we think, merit discussion.

G.S. 115-80 requires the board of education to file a countywide current expense budget, a supplemental tax budget, a capital outlay budget, and a debt service budget. The budget requests are to be filed with the county commissioners on or before the fifteenth day of June and all funds necessary to operate the schools are to be requested, whether the funds are from State or local sources, but no funds are to be allotted for providing instruction for more than 180 days—either from State or local sources.

"The countywide current expense fund shall include all funds for current expenses levied by the board of county commissioners in any county to cover items for current expense purposes, and also all fines, forfeitures, penalties, poll and dog taxes, nontax funds, or any other funds, to be expended in the current expense budget. . . "

It further provides that it "shall be the first duty of county and city boards of education and the board of county commissioners" to provide adequate funds for plant maintenance and the items under fixed charges not provided from State funds in order to protect and preserve the investment of administrative units in school plants. However, if the board of education can by economic management properly maintain the plants for use at all times for an amount less than that placed to the credit of the school fund by law, "it shall be in the discretion of such board of education *with the approval of the board of county commissioners to use such excess to supplement any item of*

*expenditure in its current expense fund."* (Emphasis supplied.) There is a further provision:

> "Notwithstanding any other provisions of this Chapter, when necessity is shown by county and city boards of education, or peculiar local conditions demand, for adding or supplementing items of expenditure in the current expense fund, including additional personnel and/or supplements to the salaries of personnel, the board of county commissioners may approve or disapprove, in part or in whole any such proposed and requested expenditure. *For those items it approves, the board of county commissioners shall make a sufficient tax levy to provide the funds:* Provided, that nothing in this Chapter shall prevent the use of federal or privately donated funds which may be made available for the operation of the public schools under such regulations as the State Board of Education may prescribe." (Emphasis supplied.)

G.S. 115-87 provides the "Procedure in cases of disagreement or refusal of tax-levying authorities to levy taxes" as follows:

> "In the event of a disagreement between the county or city boards of education and the tax-levying authorities as to the amount of the current expense fund, the capital outlay fund, and the debt service fund, *or any item of either fund,* the chairman of the county or city board of education and the presiding officer of the tax-levying authorities shall arrange for a joint meeting of said boards within one week of the disagreement. *At such joint meeting, the budget or budgets over which there is disagreement shall be gone over carefully and judiciously item by item.* If agreement cannot be reached in this manner, the board of education whose budget is in question and the tax-levying authorities shall each have one vote on the question of the adoption of these amounts in the budget. A majority of the members of each board shall cast the vote for each board.
>
> In the event of a tie, the clerk of the superior court shall act as arbitrator upon the issues arising between such boards and he shall render his decision thereon within five days, but either the board of education or the tax-levying authorities shall have the right to appeal to the superior court within 10 days from the date of the decision of the

Board of Education v. Board of Commissioners

clerk of the superior court, and it shall be the duty of the judge hearing the case on appeal to find the *facts as to the amount of the current expense fund, the capital outlay fund, and the debt service fund, which findings shall be conclusive, and he shall give judgment requiring the tax-levying authorities to levy the tax which will provide the amount of the current expense fund, the capital outlay fund, and the debt service fund, which he finds necessary to maintain the schools in the administrative unit.* In case of an appeal to the appellate division which would result in a delay beyond a reasonable limit for levying the taxes for the year, the judge shall order the tax-leving authorities to levy for the ensuing year a rate sufficient to pay the debt service fund, and to produce, together with what may be received from the nine months' school fund and from other sources, an amount for the current expense fund and the prorated part of capital outlay fund equal to the amount of these funds for the previous year. Also, in case of an appeal, all papers and records relating to the case shall be considered a part of the record for consideration by the court.

The tax-levying authorities shall forthwith levy the taxes according to the judgment rendered and upon refusal to do so, the members of said authority shall be in contempt and may be punished accordingly." (Emphasis supplied.)

Although the Court had, in interpreting the previous statutes, made it applicable to disagreement as to *any item* of a fund, the Legislature by the 1955 Act specifically so provided, and additionally provided that at the joint meeting the two boards should go over "carefully and judiciously *item by item*" (emphasis supplied) the budget or budgets over which there is disagreement. In *Administrative Unit v. Commissioners of Columbus,* 251 N.C. 826, 830, 112 S.E. 2d 539 (1959), Justice Rodman, speaking for the Court, and referring to the 1955 Act and particularly the budgetary and disagreement provisions, said:

"The basic philosophy with respect to the operation of our school system remains. It is the duty of the board of education to evaluate their needs, apply to the board of county commissioners for funds to supply the needs, and when funds are appropriated, to spend the same within the designated classification, current expenses and capital out-

lay, as will best serve school needs. It is the duty of county commissioners to study the request for funds filed with them by the board of education and to provide by taxation such funds, and only such funds, as may be needed for economical administration of schools. G.S. 115-80."

[1]    We think it abundantly clear from the statutory provisions and their history and from the interpretation placed thereon by the Supreme Court that the county commissioners have the right, indeed the duty, to consider the budget requests submitted by the board of education on a line by line basis. Certainly there can be no doubt but that this must be done where the requests of the board of education, if granted, would require an additional tax levy. We think the statutes clearly imply this as a requirement even where no additional tax levy is necessary. G.S. 115-80 clearly provides that where the board of education is able to maintain the school plants for an amount less than that which has been placed to the credit of the school fund by law, the board may, in its discretion, use the excess to supplement any item of expense in its current expense fund, but only *with approval of the county commissioners.* We think it meet and proper that the commissioners consider the budgets on a line by line basis. The board of commissioners are the representatives of the taxpayers in levying the tax, collecting the revenue therefrom, and spending it—all in the manner which will best suit the needs and interests of all the taxpayers. One of their duties is to provide the funds *necessary* to operate the public schools for nine months, but *only such funds as are needed for the economical administration of the schools.* They can only fulfill their duty to the taxpayers by considering closely all budgets presented to them as requests for funds. The statute requires the itemization of the budget requests and we think the General Assembly intended that each item be considered by the county commissioners, regardless of whether additional tax levy is necessary.

We have found no case where the procedure in event of disagreement has been employed where no additional tax levy is required to furnish the funds requested. Indeed G.S. 115-87 requires the judge on appeal to "give judgment requiring the tax-levying authorities to levy the tax" necessary to provide the amount he finds necessary to maintain the schools. Other provisions with respect to ordering a tax levy pending appeal and providing for punishment by contempt of the tax-levying

authorities if they fail to comply are included in the statute. However, the statute is entitled "Procedure in cases of disagreement *or* refusal of tax-levying authorities to levy taxes". (Emphasis supplied.) It clearly and unequivocally states that the procedure set out is to be used "[i]n the event of a disagreement between the county or city boards of education and the tax-levying authorities as to the amount of the current expense fund, the capital outlay fund, and the debt service fund, or *any item of either fund"*. (Emphasis supplied.) Further, at the joint meeting of the two boards they are to go over carefully and judiciously the item or items in dispute and attempt to reach agreement. If they cannot, then each board has one vote "on the question of adoption of these amounts in the budget". We are of the opinion that the General Assembly has provided the mechanics for arriving at a settlement of disagreements with respect to any item of the budget which is not approved by the county commissioners.

Inherent in the failure of the commissioners to approve an item is, of course, their conclusion that it is not needed for the economical administration of the schools. Failure to approve an item would necessarily reduce the total amount of the budget in which the item appears. This the Commissioners, in the case before us, failed to do. Instead they approved the total amount of the current expense fund and advised the Board of Education that the Board of Education should advise the Board of Commissioners to which item they would add the excess in the salary item. If the amount of the salary item was not approved, the deficiency should have been deducted from the total of the current expense budget. That this is the direction of the statute is further demonstrated by the directions to the Superior Court.

[2] In the event of an appeal to the superior court, the judge is directed by the statute to "find the facts as to the *amount* of the current expense fund, the capital outlay fund, and the debt service fund, which findings shall be conclusive, and he shall give judgment requiring the tax-levying authorities to levy the tax which will provide the *amount* of the current expense fund, the capital outlay fund, and the debt service fund, *which he finds necessary to maintain the schools in the administrative unit."* (Emphasis supplied.) Here, the trial judge did not find facts as to the amount of the current expense fund, but did find that there was no dispute as to the amount thereof. He did not find the salary item a *necessary* item in the maintenance of the

schools but found that the amount requested was not unreasonable and concluded that the Board of Education "is in the best position to determine the reasonableness of a salary supplement to be paid to its Superintendent which does not require the levying of additional taxes but which shall be paid from apportioned Current Expense Funds". Upon the record before us we do not quarrel with the finding or the conclusion. However, the court failed to "find the facts as to the amount of the current expense fund" nor did he make any findings or conclusions with respect to whether the disputed amount is needed for the maintenance of the schools. We note that G.S. 115-88 provides for a jury trial upon the demand of the county commissioners. The issues to be tried are "as to the *amount* of the current expense fund . . . " and the statute states with particularity and definiteness and without ambiguity that "[t]here shall be submitted to the jury for its determination the issue as to what amount is *needed* to maintain the schools, and they shall take into consideration the *amount needed* and the amount available from all sources as provided by law". (Emphasis supplied.) Certainly it is the intent of the General Assembly that the issue for determination shall be the same whether the determination be by the court or by a jury. It may well be that the judge, in his deliberation, considered the matter on the basis of need of the disputed item for the maintenance of the schools, but the record does not so indicate.

The matter must be remanded for proceedings in the Superior Court not inconsistent with this opinion.

Judges MORRIS and VAUGHN concur.